**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff-Appellee,**

v.

**Reese M. STIDHAM, III, H. Paige Scarborough and John A. Bruner, Defendants-Appellants.**

**Nos. 80–7735, 81–7048.**

United States Court of Appeals, Fifth Circuit.*
Unit B

Oct. 15, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

King & Spalding, William A. Clineburg, Jr., Atlanta, Ga., for defendants-appellants in both cases.

C. B. Rogers, Phillip S. McKinney, R. H. Sinkfield, Paul W. Stivers, Atlanta, Ga., for plaintiff-appellee in both cases.

R. Byron Attridge, Dan L. Heller, J. Kevin Buster, Atlanta, Ga., for defendants-appellants in No. 81–7048.

Before HILL, FAY and HENDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Merrill Lynch, Pierce, Fenner & Smith, Incorporated (hereinafter Merrill Lynch) brought this action in United States District Court, Middle District of Georgia, to enjoin Reese M. Stidham, III, H. Paige Scarborough, and John A. Bruner (hereinafter defendants) from violating noncompetition and nondisclosure terms in their respective employment contracts. The district court granted the injunction which we vacate in part and affirm in part, 506 F.Supp. 1182.

I.

Defendants Stidham, Scarborough, and Bruner were employed by Merrill Lynch on December 30, 1974, March 14, 1977, and June 19, 1978, respectively. Contemporaneous with his hiring, each was placed in an "account executive training program," which involved intensive as well as expensive training at Merrill Lynch's New York headquarters. To these defendants, this program was an absolute necessity: neither Stidham, Scarborough nor Bruner had any prior securities experience, and obviously none of the three defendants met the strict license and registration requirements applicable to dealers in securities. The training period, during which defendants were compensated as salaried employees but generated no income for Merrill Lynch, lasted approximately one-half year. Following licensing, defendants became "account executives"—stockbrokers—with the Athens, Georgia office of Merrill Lynch.

In connection with his employment, each defendant executed a contract with Merrill Lynch containing two restrictive covenants, which are the essence of this litigation. These promises constitute the first two paragraphs of the agreements between the parties and provide:

1. All records of Merrill Lynch, including the names and addresses of its clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination for any reason of my employment with Merrill Lynch, and that none of such records nor any part of them is to be removed from the premises of Merrill Lynch either in original form or in duplicated or copied form, and that the names, addresses, and other facts in such records are not to be transmitted verbally except in the ordinary course of conducting business for Merrill Lynch.

2. In the event of termination of my services with Merrill Lynch for any reason, I will not solicit any of the clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch in any community or city served by the office of Merrill Lynch, or any subsidiary thereof, at which I was employed at any time for a period of one year from the date of ter-

mination of my employment. In the event that any of the provisions contained in this paragraph and/or paragraph (1) above are violated I understand that I will be liable to Merrill Lynch for any damage caused thereby.

Defendants, it is fair to say, were successful with Merrill Lynch. Their salaries—prior to their respective resignations from Merrill Lynch—ranged from approximately $54,000 to $84,000 per year.[1] Nonetheless, they were receptive when in mid-1980 they were courted by a major southeastern securities firm, Atlanta-based Robinson-Humphrey Company, Incorporated. By August 1980, each had accepted a position with that firm to open and operate its new Athens office. The district court found that prior to informing Merrill Lynch of their plans, defendants duplicated various records containing vital sales information[2] and provided Robinson-Humphrey with client names and addresses so that the latter might dispatch announcements of its new office opening to investors likely to take advantage of it.[3]

On September 12, 1980 defendants resigned. Five days later Merrill Lynch brought suit.

The complaint, filed on September 17, alleged jurisdiction under 28 U.S.C. § 1332 (1976), prayed for all manner of equitable relief—injunction, preliminary and permanent, impression of constructive trust, and accounting—and demanded legal damages, attorneys' fees, and costs. The district court on that very day conducted an in camera hearing and preliminarily enjoined defendants Stidham, Scarborough, and Bruner from violating the terms of the restrictive covenants set out *supra*. This Court, following defendants' immediate application, stayed the preliminary injunction pending appeal. Merrill Lynch shortly thereafter successfully moved the district court to schedule a hearing to consider the issue of permanent injunctive relief. The date was set for November 13.[4]

On January 15, 1981, the district court issued an order, obviously the product of careful research and considerable thought, permanently enjoining defendants from violating the nondisclosure provision of their employment contract, i.e., paragraph 1, *see* p. 1099, *supra,* and enjoining until noon September 12, 1981 violation of the noncompetition provision of their contracts, i.e., paragraph 2, *see* p. 1099 *supra.* Again, defendants appealed to this Court. Pending resolution of this matter, we have stayed that portion of the permanent injunction dealing with the noncompetition covenant.

### III.

The basis of federal jurisdiction being diversity of citizenship, we are bound to apply the substantive law of the State of Georgia in this case.[5]

### A. Noncompetition Clause

The parties have cited a host of cases containing numerous versions of restrictive

---

1. Defendant Scarborough, who earned about $54,000 per year in the time period prior to his resignation, had completed his training program at Merrill Lynch's expense scarcely one and a half years earlier.

2. These records are known in the securities business as "holding pages." They contain a given customer's name and an inventory of his holdings.

3. The district court further found that some of Merrill Lynch's clients were "personally contacted, told of the planned opening of a Robinson-Humphrey office and asked to authorize a transfer of securities held by Merrill Lynch to Robinson-Humphrey. Defendant Bruner even went so far as to sign the name [sic] of some of the customers serviced by him to a required

transfer form which only the customer can sign." Order of January 15, 1981 at 4.

4. Defendants, in advance of the scheduled date, petitioned this Court to issue a writ of mandamus ordering the district court to hold no further hearings on the permanent injunction questions until this Court had decided the preliminary injunction appeal. We declined.

5. The employment contracts at issue purport to choose New York law as governing. We cannot honor this choice since a Georgia court would not. Restrictive covenants contravene Georgia public policy and are construed under Georgia law if they are to be applied therein. *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 238 S.E.2d 368 (1977).

covenants sustained or rejected under the authority of Georgia law. Beyond basic hornbook law, the authorities are at war.[6] "Reasonableness" is the *purported* touchstone of this analysis under the Georgia authorities. *See, e.g., Barry v. Stanco Communications Products, Incorporated,* 243 Ga. 68, 252 S.E.2d 491 (1979); *Orkin Exterminating Company v. Pelfrey,* 237 Ga. 284, 227 S.E.2d 251 (1976). That this standard has been rendered hollow and meaningless under the precedent can be no clearer than in the present case.

■ An investment banker, a stockbroker, develops customers globally. An Athens, Georgia stockbroker might have customers, for example, in Los Angeles, Chicago, and New York. For Merrill Lynch to attempt to prevent that broker, after severance, from soliciting business in California, Illinois and New York, would unduly hamper professional mobility and practice. But to draft a narrow contract that includes a promise not to solicit from "clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch," represents an exemplary attempt to identify a potential drain of corporate training resources and to respond with no more contractual adhesion than necessary.

Through the noncompetition covenant here at issue, then, Merrill Lynch sought no more than to prevent employees it trained at considerable expense from filling the coffers of a competitor by virtue of Merrill Lynch's efforts. Georgia law recognizes the validity of such a goal and has castigated in express terms the practice of "pirating [a] former employer's customers" through skills developed at the "employer's direct or indirect expense." *Howard Schultz & Associates v. Broniec,* 239 Ga. 181, 183–84, 236 S.E.2d 265, 268 (1977). The covenant here at issue is reasonable. Nonetheless it fails. The Supreme Court of Georgia has injected a bright-line test into this area by requiring an express *geographical* description of the territory covered, without reference to the overall reasonableness of the limitation in light of the nature of the profession or trade involved. No such express territorial limitation is found in this covenant. In *Guffey v. Shelnut & Associates, Incorporated,* 247 Ga. 667, 670, 278 S.E.2d 371, 373 (1981), the Georgia Supreme Court squarely held that "[a]lthough a covenant prohibiting solicitation of the employer's customers is less restrictive than a covenant prohibiting competition, both must specify the territory in which the employee is to be foreclosed." *Id.,* 278 S.E.2d at 373. We would think that a "less restrictive" covenant would more likely be sustained by the court than a more restrictive one. Such is not the case. The Georgia Supreme Court—without regard to reasonableness—requires that a territorial limitation be set out in geographical terms and apparently does not intend to reconsider its position.[7]

### B. *Nondisclosure Clause*

■ In its January 15, 1981 order, the district court permanently enjoined defend-

---

**6.** Justice Jordan of the Georgia Supreme Court expressed his frustration in other words. "Ten Philadelphia lawyers," he wrote, "could not draft an employer-employee restrictive covenant agreement that would pass muster under the recent rulings of this court." *Fuller v. Kolb,* 238 Ga. 602, 605, 234 S.E.2d 517, 519 (1977) (Jordan, J., dissenting).

**7.** Were there any doubt covering this proposition, we would certify the case to the Georgia Supreme Court. Ga.S.Ct.R. 36, Ga.Code Ann. § 24–4536. But *Guffey* leaves no doubt. The district court could well have been expected to resolve the case contrary to our opinion since *Guffey* and its unequivocal language came down in late May, months after the district court decided the permanent injunction question.

In *Guffey,* the Georgia court reviewed its authorities and concluded that the question before it was "not an open one." 247 Ga. at 670, 278 S.E.2d at 373. Like the King of Siam, we express some "puzzlement." The court ostensibly regarded Georgia law as settled and certain on this score prior to *Guffey.* Moreover, we would not have thought the court reluctant to solidify state common law on this point so that it might comport with a "reasonableness" standard. The number of recent cases in this area reaching the Georgia Supreme Court alone testifies to the uncertainty attendant draftsmanship of noncompetition covenants. *Guffey v. Shelnut & Assoc., Inc.,* 247 Ga. 670, 278

ants "[f]rom directly or indirectly violating paragraph 1 of the subject contracts by in any way using all or any portion of Merrill Lynch's records copied, extracted, or verbally transmitted by either defendant to Robinson-Humphrey from Merrill Lynch's records ...." Defendants object to the district court's enforcement of their paragraph 1 promise on two key grounds. First, they argue that the duration of the covenant is perpetual and accordingly the covenant fails. Second, they argue that the order enjoins defendants from imparting their own personal recollections of their clientele. This is impermissible, allegedly, because actual physical records but not knowledge of their contents can be considered an employer's "property." These arguments fall flat; we explain why seriatim.[8]

■ Paragraph 1 of the employment agreement contains three clauses, see p. 1099 *supra,* only the first of which ("[a]ll records ... are and shall remain the property of Merrill Lynch ... during employment ... *and after termination* ....) reaches beyond the temporal existence of an employment relationship. The other two clauses, which prohibit removal of records or duplicates as well as verbal transmission of their contents, apply during the employment relationship. The entire paragraph, then, is no more than an agreement between parties (1) fixing title to physical documents and (2) requiring confidentiality during employment. The perpetuality of the title agreement is not offensive nor is the confidentiality agreement unreasonable. The *injunction* does, however, have a twist to it, which we approve. As a result of the district court's finding blatant breach of paragraph 1 by defendants during the employment relationship, the court enjoined defendants from reaping

S.E.2d 371 (1981); *Dalrymple v. Hagood,* 246 Ga. 235, 271 S.E.2d 149 (1980); *Marcoin, Inc. v. Waldron,* 244 Ga. 169, 259 S.E.2d 433 (1979); *Jenkins v. Jenkins Irrig., Inc.,* 244 Ga. 95, 259 S.E.2d 47 (1979); *Johnson v. Lee,* 243 Ga. 864, 257 S.E.2d 273 (1979); *Barry v. Stanco Comm. Prods., Inc.,* 243 Ga. 68, 252 S.E.2d 491 (1979); *Nationwide Mut. Ins. Co. v. Elder,* 240 Ga. 592, 242 S.E.2d 97 (1978); *Howard Schultz & Assoc. v. Broniec,* 239 Ga. 181, 236 S.E.2d 265 (1977); *Kloville, Inc. v. Kinsler,* 239 Ga. 569, 238 S.E.2d 344 (1977); *Fuller v. Kolb,* 238 Ga. 602, 234 S.E.2d 517 (1977); *McNease v. Nat'l Motor Club of America,* 238 Ga. 53, 231 S.E.2d 58 (1976); *Edwards v. Howe Richardson Scale Co.,* 237 Ga. 818, 229 S.E.2d 651 (1976). Given that, as well as the precedential mortality in this area, see *Barry v. Stanco, supra* (overruling three cases); *Fuller v. Kolb, supra* (overruling one case), we would, with deference, suggest a fresh look.

8. Defendants have also argued two points with respect to the propriety of equitable relief which need not detain us in text—(1) the adequacy of damages for breach of contract; (2) the "unclean hands" of Merrill Lynch as an equitable defense. The injury here is such that damages could not adequately compensate. Were defendants permitted by the law to exploit the clientele of their former employers, every investment that reasonably flowed from the exploitation should be included in the damages award. How such a figure could be arrived at escapes us. More specious is defendants' argument that because Merrill Lynch is a large concern, the injury is miniscule. See

Brief of Appellant at 12 (filed March 11, 1981). One cannot be certain, but the success of Merrill Lynch may well be attributable to its diligence over the years in holding parties to the contracts that they freely executed. Today, they seek to do no more. On this point, defendants further argue that the use of the term "damage" in the employment agreement limits Merrill Lynch to legal damages and that Merrill Lynch's insistence upon an appeal bond in a stated amount suggests the certainty and adequacy of legal damages. The clear import of the term "damage" in the agreement is "injury." The motion for bond suggests Merrill Lynch's prudence, nothing more.

With regard to the question of "unclean hands," defendants sought to introduce testimony that Merrill Lynch itself actively recruited experienced stockbrokers and that it was customary in the securities industry for stockholders to carry records with them from job to job. This argument is curious. Its suggestion is that breach of contract, with apparent impunity, is tolerated on a day to day basis in the securities industry, a suggestion which we doubt seriously. Moreover, even if such is the case Merrill Lynch's alleged uncleanliness has not been asserted to involve the transaction at hand. Such is the requirement of Georgia law, see *Morton v. Gardner,* 242 Ga. 852, 855, 252 S.E.2d 413 (1979); *Atlanta Ass'n of Fire Ins. Agents v. McDonald,* 181 Ga. 105, 112, 181 S.E. 822, 826–27 (1935), so this equitable defense fails.

the benefits of the ill-gotten information into the post-employment period. Thus, while the confidentiality covenant itself was not of perpetual duration, *but cf. Howard Schultz & Associates, Inc. v. Broniec*, 239 Ga. 181, 236 S.E.2d 265 (1977), the district court's injunction with regard to nondisclosure is. We decline to disturb the nondisclosure aspect of the injunction. It is not an abuse of discretion and its terms are "peculiarly for the discretion of the district judge sitting as a chancellor." *J.M. Fields of Anderson, Incorporated v. Kroger Company*, 330 F.2d 686, 687 (5th Cir. 1964).

### IV.

We, then, affirm that part of the district court order granting enforcement of paragraph 1 of the employment agreements between Merrill Lynch and defendants Stidham, Scarborough, and Bruner. The injunction regarding the noncompetition clause is vacated for the reasons and with the concerns set out in this opinion.[9]

AFFIRMED in part; VACATED in part.

---

**9.** Judicial enforcement of a nondisclosure covenant simultaneous with invalidation of a noncompetition covenant is appropriate under controlling law. *Nolan v. Meyners-Robinson Co.*, 246 Ga. 49, 268 S.E.2d 656 (1980).