**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**David M. BAUM, Defendant.**

**Civ. A. No. C85-2744A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 24, 1986.

S. Richard Gard, Jr., Carier, Ansley, Smith & McLendon, Atlanta, Ga., for plaintiff.

Wendell K. Willard, Willard & Olsen, Tucker, Ga., for defendant.

## ORDER

MOYE, Chief Judge.

Prudential Insurance Company of America ("Prudential") has sued one of its former sales agents in this action for conversion of its property, breach of fiduciary duty, tortious interference with contract, and breach of a contract of employment. The defendant now moves to dismiss the complaint. Jurisdiction in this case is predicated upon diversity of citizenship between the parties. Both a temporary restraining order and a preliminary injunction have been granted in favor of Prudential.

Prudential asserts that because its requested injunctive relief was granted, this precludes the grant of a motion to dismiss. This argument, based on the stringent requirements for injunctive relief, is meritless. By definition, such relief is granted in an expedited manner in order to preserve the status quo, pending a meaningful investigation into the merits. A motion to dismiss, on the other hand, tests the legal sufficiency of the complaint. Material extraneous to the complaint is not considered unless the court elects to convert the motion to dismiss into one for summary judgment. Fed.R.Civ.P. 12(b).

In a motion to dismiss for failure to state a claim under Rule 12(b)(6), the allegations of the complaint and all reasonable inferences from the facts alleged must be taken as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Brown v. Ivie,* 661 F.2d 62, 66 (5th Cir.1981). A complaint must not be dismissed unless it is shown that the "[p]laintiff can prove no set of facts in support of his claim, which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Thus, the movant sustains a high burden in cases under Rule 12(b)(6). Dismissal is appropriate, however, if the complaint fails to allege facts regarding an element of the claim necessary to obtain relief. *Blum v.*

*Morgan Guaranty Trust Co. of New York,* 709 F.2d 1463, 1466 (11th Cir.1983); 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07[2.–5] at 12–68 & n. 19 (2d ed. 1985). Furthermore, a motion to dismiss should be granted if an affirmative defense or other bar to relief appears on the face of the complaint. *Quiller v. Barclays American/Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir.1984); 2A J. Moore & J. Lucas, *supra,* at 12–69.

### I. *Breach of contract*

#### A. *Noncompetition and nonsolicitation provisions*

The defendant argues generally that the contract provisions on which the Prudential bases its claim for breach of contract are unenforceable and void. "By both constitutional and legislative provision, Georgia prohibits contracts or agreements in general restraint of trade." *Howard Schultz & Associates of the Southeast, Inc. v. Broniec,* 239 Ga. 181, 183, 236 S.E.2d 265 (1977). These provisions do not rigidly bar restrictive covenants in employment contracts, but the Georgia courts scrutinize them closely with certain requirements of reasonableness in mind. "A covenant not to compete ancillary to an employment contract is enforceable only where it is strictly limited in time and territorial effect and is otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee." *Id.* Prudential argues that consideration of these reasonableness requirements is inappropriate upon a motion to dismiss because it involves questions of fact, but "whether or not a covenant against competition in an employment contract is reasonable is a question of law appropriately answered based upon the wording of the covenant." *Koger Properties, Inc. v. Adams-Cates Co.,* 247 Ga. 68, 69, 274 S.E.2d 329 (1981).

The Sales Manager's Agreement ("Agreement"), which is the source of the restrictive covenants in question, is appended as exhibits "A" and "B" to the com-

plaint. In particular, the noncompetition and nonsolicitation provisions are found at section 5(2) and provide as follows:

The Sales Manager Agrees: ...

(2) That for a period of two years from the termination date of this Sales Manager's Agreement, I shall not directly or indirectly:

a. sell to or solicit from any company or subsidiary contractholder who became known to me during my employment, on behalf of any other person or organization, any insurance policy, contract, or any other financial service or product that competes with those sold by the Company or its subsidiaries; or

b. do anything to cause or encourage anyone to reduce, discontinue, or terminate any Company or subsidiary policy, contract, service, or product of any kind; or

c. do anything to cause or encourage any Company or subsidiary employee to either:

(1) terminate his or her employment with the company for any reason; or

(2) to sell or solicit services or products on behalf of any other company which are in any way similar to those sold by the Company or its subsidiaries.

These contract provisions contain no territorial limitation on the employment restraints whatsoever. The absence of such geographical limitations renders a noncompetition covenant void. *Fuller v. Kolb*, 238 Ga. 602, 603, 234 S.E.2d 517 (1977); *Edwin K. Williams & Co.—East v. Padgett*, 226 Ga. 613, 614, 176 S.E.2d 800 (1970). *See generally* Comment, *A Fresh Look: Lowering the Mortality Rate of Covenants Not to Compete Ancillary to Employment Contracts and to Sale of Business Contracts in Georgia*, 31 Emory L.J. 636, 652 (1982). Whether the clauses found in section 5(2) are characterized as noncompetition or as nonsolicitation provisions does not alter this analysis. *Guffey v. Shelnut & Associates, Inc.*, 247 Ga. 667, 669, 278 S.E.2d 371 (1981); *Lane Co. v. Taylor*, 174 Ga.App. 356, 358, 330 S.E.2d 112 (1985).

B. *Nondisclosure provisions*

■ The defendant also challenges the enforceability of the nondisclosure clauses found at section 1(h), which reads:

Under these amended provisions I agree to:

(1) treat all information which either identifies or concerns contractholders of the Company or any of its subsidiaries, including but not limited to, contract values, or beneficiary information, as Company property, confidential, and of special value to the Company; and therefore, the Sales Manager agrees not to provide at any time to any person outside the Company's employ, any such information which would be used to solicit for sales on behalf of another company or organization.

(2) Deem as exclusively Company property, all supplies, documents, records, and all contractholder information or product information from any source relating to any Company or any subsidiary product; and therefore the Sales Manager agrees that all such property, including all copies thereof, shall be delivered only to a proper Company representative.

(3) Deliver to the Company promptly upon termination of my Agreement, either by myself or the Company, all Company property including that mentioned above as well as all Company monies, equipment and the like then in my custody.

Complaint, Exhibit "B."

Nondisclosure covenants are subject to reasonableness requirements because they affect the dissemination of information necessary to free competition among businesses. *See Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676, 238 S.E.2d 368 (1977). "Unlike general noncompetition provisions, however, specific nondisclosure clauses bear no relation to territorial limitations and their reasonableness turns on factors of time and the nature of the business interest sought to be protected." *Durham v. Stand-By Labor of Georgia, Inc.*, 230 Ga. 558, 563, 198 S.E.2d 145 (1973). The *Dur-*

*ham* court said that the "business interest" component of this reasonableness requirement depends on two subsidiary considerations:

(1) whether the employer is attempting to protect confidential information relating to the business, such as trade secrets [sic], methods of operation, names of customers, personnel data, and so on—even though the information does not rise to the stature of a trade secret; and (2) whether the restraint is reasonably related to the protection of the information.

*Id.* at 564, 198 S.E.2d at 149–150. *Accord Lane,* 174 Ga.App. at 359, 330 S.E.2d at 116. The protection of such confidential information is ordinarily not "within the purview of traditional Georgia law as to property" and thus requires a valid contract to prevent postemployment disclosure. *Durham,* 230 Ga. at 563, 198 S.E.2d at 149. The clauses prohibiting disclosure lack any time limitation and therefore purport to be effective in perpetuity. The Georgia courts have held that a nondisclosure covenant is unreasonable and therefore unenforceable if it lacks any time limitation. *Broniec,* 239 Ga. at 188, 198 S.E.2d at 270; *Thomas v. Best Manufacturing Corp.,* 234 Ga. 787, 788, 218 S.E.2d 68, 70 (1975). *See Aladdin, Inc. v. Krasnoff,* 214 Ga. 519, 520, 105 S.E.2d 730 (1958) (invalidating nondisclosure covenant unlimited as to time or territory because "[c]onceivably, this would include all of the plaintiff's customers from the time of its incorporation to that time in the unforeseeable future when it shall cease to do business.")

The plaintiff's principal argument that section 1(h) does not constitute a nondisclosure provision is that this part of the contract merely fixes title to property. Prudential cites *Merrill Lynch, Pierce, Fenner & Smith v. Stidham,* 658 F.2d 1098 (5th Cir., Unit B, 1981), in which the Fifth Circuit affirmed the upholding of a "nondisclosure clause" requiring employee assent that:

1. All records of Merrill Lynch, including the names and addresses of its clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination for any reason of my employment with Merrill Lynch, and that none of such records nor any part of them is to be removed from the premises of Merrill Lynch either in original form or in duplicated or copied form, and that the names, addresses, and other facts in such records are not to be transmitted verbally except in the ordinary course of conducting business for Merrill Lynch.

*Id.* at 1099. The court of appeals characterized this provision as "no more than an agreement between parties (1) fixing title to physical documents and (2) requiring confidentiality during employment." *Id.* at 1102. It further held that "the perpetuality of the title agreement is not offensive nor is the confidentiality agreement unreasonable." *Id.*

This opinion, which charts a course not taken by any Georgia court to date, is factually distinguishable from the case at bar. The first part of the clause at issue in *Stidham* stated that various *records,* including client lists, were to remain the property of and in the possession of the plaintiff. This fact supports the appellate court's conclusion that such a contract clause merely fixes title to property, thereby constituting what the plaintiff characterizes as a "proprietary covenant." In the case sub judice, however, subsection (1) of section 1(h) prohibits disclosure of "all information which either identifies or concerns contractholders, ... including but not limited to, contract values, or beneficiary information...." Subsection (2) further prohibits disclosure of "all contractholder information or product information from any source...." Finally, subsection (3) refers to "all Company property including that mentioned above....," and is thus integrated with subsections (1) and (2). These requirements are substantially more extensive than a contract provision merely prohibiting removal of records from the premises or the verbal transmission of their contents. In addition, *Stidham* reaches its result without construing Geor-

gia law.[1] The ruling in *Stidham*, expressly referring to the contract provision in question as a "nondisclosure clause," does not abrogate the common law rule in Georgia requiring such covenants to be reasonable. *See Quittmeyer, Trade Secrets and Confidential Information Under Georgia Law*, 19 Ga.L.Rev. 543, 666–67 & nn. 187, 192 (1985) (suggesting that *Stidham* upheld a nondisclosure covenant lacking time limitations because the misconduct in that case occurred during the defendants' employment). While it may have been possible for Prudential to draft subsections (2) and (3) in order to create a "proprietary" covenant merely fixing title to its property, it did not so cleverly draft these clauses.[2]

■ This distinction brings the instant case within the line of Georgia authority governing nondisclosure covenants. As discussed above, the absence of any restriction upon the duration of the nondisclosure provision renders it unenforceable. Even if this flaw failed to defeat its enforceability, the provision is also unreasonable because it is overbroad. Nondisclosure covenants adjudged overbroad are considered an unfair restraint upon competition. *See e.g., Rollins Protective Services Co. v. Palermo*, 249 Ga. 138, 142–43, 287 S.E.2d 546 (1982). The nondisclosure clauses in the Agreement forbid disclosure of all information that identifies or concerns policyholders or Prudential products, whether or not that information is within the scope of the plaintiff's legitimate business interests. Nondisclosure provisions will not be enforced when they "prohibit disclosure of information not needed for the protection of the employer's legitimate business inter-

ests." *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676–77, 238 S.E.2d 368 (1970) (invalidating covenant that prohibited disclosure of "any information concerning any matters affecting or relating to the business of employer"). The Georgia Supreme Court in *Thomas v. Best Manufacturing Co.*, 234 Ga. 787, 788, 218 S.E.2d 68 (1975), held the following contract term overbroad: "I will not at any time publish or disclose to others or use for my own benefit any research, development, ... or other information pertaining to the business or affairs of ... [the employer] or any of its clients, customers...." The Thomas court held this nondisclosure clause unreasonable because "[t]o restrict an employee from utilizing the experience gained and using information not designated as trade secrets and attempting to extend the restriction beyond the employer's business in perpetuity to that of its clients, customers, ... reaches beyond the scope permitted in Georgia in terms of time, territory, and activities protected." *Id.* Recently, the Georgia Court of Appeals held that a jury question was presented on whether a nondisclosure covenant was related to an employer's legitimate need to maintain the confidentiality required. *Lane Co. v. Taylor*, 174 Ga.App. at 359, 330 S.E.2d at 116. The court said that the covenant in question was not facially overbroad because its reference to the protection of various items along with "any other confidential information" "severely limited" the protected materials to "only those methods, documents, forms, etc., which were confidential." *Id.* In the case at bar, the covenant only requires that the defendant "treat all information ... as

1. Since this court sits in diversity, it is bound by the decisions of Georgia courts. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). When the federal court sitting in diversity is confronted with an issue on which the Georgia courts have not ruled, it must assess all relevant information and choose the rule it thinks the Georgia Supreme Court would adopt. *See Putnam v. Erie City Manufacturing Co.*, 338 F.2d 911, 917–18 (5th Cir.1964).

2. This is precisely what distinguishes the instant case from *Prudential Insurance Co. of America*

*v. Rhodes*, No. C85–4075A (N.D.Ga. January 15, 1986), which upheld, "summarily and without discussing the case authority or evidence cited by the defendant," the following covenant:

That all books, records, and supplies furnished to me by the Company shall be the property of the Company; and that, upon termination of this Agreement, I will hand over said books, records, and supplies to a proper representative of the Company.

*Id.*, slip op. at 2 (attached to the plaintiff's supplementary brief).

Company property, confidential, and of special value to the Company...." This covenant is not saved by the reference to confidentiality, since, unlike *Taylor*, the covenant does not refer to materials confidential in the first instance. This covenant is overbroad principally because it restricts disclosure of any information whatsoever pertaining to contractholders or Prudential products no matter where or how obtained. This covenant would prohibit disclosure of information obtained from newspaper articles, advertisements, corporate annual reports, and so on. It is therefore unenforceable.

### C. *Trade Secrets*

Even though the court considers all the clauses of section 1(h) of the Agreement unenforceable, there is another basis on which to prohibit the disclosure of certain business information. The Georgia courts will provide injunctive relief to protect against disclosure of trade secrets notwithstanding an unenforceable nondisclosure covenant; this protection is an "implied term" in an employment contract. *Thomas v. Best Manufacturing Co.*, 234 Ga. at 789, 790, 218 S.E.2d at 71; *Howard Schultz & Associates, Inc. v. Broniec*, 239 Ga. at 187, 236 S.E.2d at 269–70. In this context, a trade secret "within the rules pertaining to the rights which can be protected by injunction, is a plan, process, tool, mechanism, or compound known only to its owner and those of his employees to whom it must be confided in order to apply it to the uses intended." *Thomas*, 234 Ga. at 789, 236 S.E.2d at 71.

■ Prudential does not specifically argue that trade secrets in the conventional sense are at stake in this case. But the Georgia courts have suggested that certain specialized, as opposed to general, confidential customer information may be protectible as a trade secret. *Rollins Protective Services Co. v. Palermo*, 249 Ga. 138, 142 n. 1, 287 S.E.2d 546 (1982); *Durham*, 230 Ga. at 563, 198 S.E.2d at 149; *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.*, 224 Ga. 160, 165, 160 S.E.2d 356

(1968) *See generally* Quittmeyer, *supra*, 19 Ga.L.Rev. at 663 & nn. 166–69. Whether the customer information or product information Prudential seeks to protect from disclosure rises to the level of a trade secret is a question of fact.

■ Furthermore, some items of confidential business information not qualifying as trade secrets, "non-specialized customer lists and other general confidential business and customer information," may be protectible if the defendant garnered them by "improper means or otherwise disclosed without privilege, as in violations of relationships of confidence." *Durham* 230 Ga. at 563, 198 S.E.2d at 149. The complaint adequately alleges these elements, and the materials in question are arguably protected on this basis as well. Complaint ¶¶ 9–12, 14–15.

### II. *Tortious interference with contract*

■ The defendant challenges Prudential's allegations of tortious interference with contract. This challenge does not rest on the sufficiency of the elements required to state a cause of action. Rather, it rests on the argument that Prudential has alleged a complete defense to the cause of action on the face of the complaint. Competitive privilege is such a defense, and its elements have been stated as follows:

(a) the relation concerns a matter involved in the competition between the actor and the competitor; (b) the actor does not employ improper means; (c) the actor does not intend thereby to create or continue an illegal restraint of competition; and (d) the actor's purpose is at least in part to advance its interests in its competition with the other.

*Orkin Exterminating Co. v. Martin Co.*, 240 Ga. 662, 666, 242 S.E.2d 135, 138 (1978).

While the Court agrees that Prudential has interlaced its complaint with elements of this privilege, dismissal cannot be ordered because facts are alleged negating the second element of the defense. Paragraph eighteen of the complaint states that "defendant has acted improperly and without privilege." Furthermore, paragraph

sixteen, which is incorporated by reference at paragraph seventeen, states that the defendant used "information improperly and wrongfully obtained." These allegations satisfy the pleading requirements for this cause of action.

### III. *Breach of fiduciary duty*

■ The defendant challenges the cause of action stated in count two of the complaint. The Court agrees that because of its findings regarding the unenforceability of the restrictive covenants, no contractual basis for a fiduciary duty exists. While an implied, noncontractual fiduciary duty may exist, such a duty generally ends when severance of an agent's employment with his principal occurs. *Wight v. Brown*, 77 Ga.App. 375, 378, 48 S.E.2d 784, 786 (1948).

Under certain circumstances, however, the duty may survive severance of the employment relationship.

'It may be generally stated that one having completed his office as agent or in good faith severed his relationship is free to begin negotiations on his own behalf and may operate adversely to the interests of his former principal as fully as any other individual. Due to the previous trust relationship, however, such subsequent transactions will be subjected to a rigorous examination to see that the former agent did not abuse his position of trust and influence, or in any way fail in his attitude as agent during the agency. An agent will not be permitted to terminate an agency in order to take advantage of his principal's condition or to profit by information resulting from his agency.' ... See, in this connection, *Stein v. National Life Assn.*, 105 Ga. 821 [32 S.E. 615]. ...

*Id.* at 378–79, 48 S.E.2d at 786–87. Thus, the agent may not abuse the fiduciary relationship by profiting under certain circumstances from information resulting from that relationship. Such information must generally rise to the level of a trade secret or confidential business information. *Tay-*

*lor Freezer Sales Co.*, 224 Ga. at 164–65, 160 S.E.2d at 359–60 (1968). The *Stein* case to which the *Wight* court referred also involved an insurance agent. The Georgia Supreme Court reversed a grant of injunctive relief against an insurance agent who attempted to influence policy-holders of his former company to transfer to the insurance company with which he was subsequently employed. The analysis in *Stein* supports the view that one cannot state a claim for breach of fiduciary duty under these circumstances without alleging reliance upon the plaintiff's confidential business information or trade secrets. It is settled that such information may be protected in the absence of a written agreement. *Textile Rubber & Chemical Co. v. Shook*, 243 Ga. 587, 589, 255 S.E.2d 705, 707 (1979).

■ The defendant argues vigorously that this claim should fall because customer lists and general customer information do not constitute trade secrets, as stated in *Thomas v. Best Manufacturing Corp.*, 234 Ga. at 789–90, 218 S.E.2d at 71 (1975). The Court is not persuaded that this issue should be disposed of on a motion to dismiss. The evidence may show the existence of confidential business information such as was discussed in *Taylor Freezer Sales Co.* and is alleged in paragraph nine of the complaint. The Court therefore denies the motion as to this claim.

### IV. *Conversion*

■ The defendant argues that Prudential has failed to include allegations of all elements of its conversion claim in the complaint. Citing *Wood v. Sanders*, 87 Ga. App. 84, 86, 73 S.E.2d 55, 56 (1952), the defendant suggests that the following allegations must be made: "(1) that Plaintiff has title to the property in question; (2) that the Defendant is in possession of the property at the present time; and (3) that Defendant claims title to the property *or* that Plaintiff has made demand for and the Defendant has refused to redeliver the

474

property." Defendant's brief, filed 25 June 1985, at 24. These requirements are analogous to the showing that must be made in order to prove a conversion claim. *Charter Mortgage Co. v. Ahouse,* 165 Ga.App. 497, 498, 300 S.E.2d 328, 330 (1983).

The Court finds the defendant's argument overly technical. The form of complaint for conversion shown in the Georgia Civil Practice Act supports this conclusion. O.C.G.A. § 9-11-111 (Supp.1985) suggests that a pleading need only state that the defendant "converted to his own use" the property in issue. *See Charles S. Martin Distributing Co. v. Indon Industries, Inc.,* 134 Ga.App. 179, 179, 182, 213 S.E.2d 900 (1975); *Ricketts v. Liberty Mutual Insurance Co.,* 127 Ga.App. 483, 488, 194 S.E.2d 311, 316 (1972). Even if the Court accepted the defendant's argument, it is arguable that title has been claimed in paragraph 12 of the complaint, in the prayer for relief. It may reasonably be inferred from the request for the return of property that the plaintiff's title in that property and the defendant's possession thereof is alleged. Furthermore, the caption for count one reads: *"Conversion of Property."* It is further arguable that demand for the property has been made under section 1(h) of the employment contract appended to the complaint, notwithstanding its present unenforceability. The Court feels that the defendant's argument elevates form over substance and declines to order dismissal on this ground.

## V. *Effect of this order*

The Court has granted the defendant's motion to dismiss Prudential's claim for breach of contract to the extent that it relies on the noncompetition and nondisclosure sections of the Agreement. The claims remaining in this case are those for tortious interference with contract, breach of loyalty, and conversion.

In sum, the defendant's motion to dismiss is GRANTED in part and DENIED in part.