MERRILL LYNCH, PIERCE, FEN-NER & SMITH INCORPORAT-ED, Plaintiff,

v.

Thomas C. WERTZ, et al., Defendants.

No. CIV. 01–2415(RJL).

United States District Court, District of Columbia.

Dec. 13, 2002.

Alan M. Freeman, Lead Attorney, Blank Rome LLP, Washington, DC, for Plaintiff.

William M. Sullivan, Jr., Lead Attorney, Coudert Brothers, LLP, Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

LEON, District Judge.

Now before the court is the plaintiff's, Merrill Lynch, Pierce, Fenner & Smith Inc., ("Merrill Lynch"), motion for temporary restraining order and preliminary injunction. Merrill Lynch brought these motions on December 9, 2002, to enjoin six of its former financial advisors, Thomas C. Wertz, Donald M. Smyles, Gary M. Sinderbrand, Michael C. Wertz, Denny M. Goforth, and Christopher R. Jackson, from soliciting any business from the clients they had while working at Merrill Lynch, or clients they learned of while working at Merrill Lynch, and from using confidential client lists and records obtained during their employment with Merrill Lynch.

After careful consideration of the arguments presented to the Court at the hearing held December 10, 2002, the plaintiff's motion and complaint, the defendants' opposition thereto, and supplemental memoranda filed by both the plaintiff and defendants, the Court hereby GRANTS plaintiff's motion for temporary restraining order as to defendants Thomas C. Wertz, Donald M. Smyles, Michael C. Wertz, and Denny M. Goforth, and DENIES the motion as to defendants Gary M Sinderbrand and Christopher R. Jackson.[1]

## I. BACKGROUND

Each of the defendants were employed as financial advisors at the Washington, D.C. office of Merrill Lynch for various periods of time.[2] On Thursday, December 5, 2002, plaintiff alleges, and defendants do not dispute, that all six defendants resigned from Merrill Lynch without advance notice and immediately joined UBS PaineWebber Inc., ("PaineWebber"), a Merrill Lynch competitor. *See* Aff. Paul

---

1. The Court does not adopt the proposed temporary restraining order submitted by the plaintiff with its complaint and motion for temporary restraining order. After reviewing the employment agreements between the individual defendants and Merrill Lynch, the Court finds that the proposed order is not appropriate and has crafted an order that provides more limited relief than the relief requested by plaintiffs.

2. Thomas C. Wertz began working for Merrill Lynch in 1980; Donald M. Smyles started with Merrill Lynch in 1978, left for a period of fourteen months in 1984 and 1985, and resumed working for Merrill Lynch in 1985; Gary M. Sinderbrand was employed with Merrill Lynch from 1980 until 1999, and again beginning in August 2001; Michael C. Wertz joined Merrill Lynch in 1996; Denny B. Goforth joined Merrill Lynch in 1999; and Christopher R. Jackson started with Merrill Lynch in 1991.

Moulden ("Moulden Aff.") at ¶ 8. Paul Moulden, the administrative manager of Merrill Lynch's Washington, D.C. office, estimates that defendants had "acquired access" to Merrill Lynch accounts representing $500 million in assets. *See id.* at ¶ 7.

At the outset, or during the defendants' employment with Merrill Lynch, plaintiff maintains that each defendant signed various types of employment agreements, including confidentiality agreements and non-disclosure agreements, that contain restrictions on post-employment solicitation of Merrill Lynch customers and the use of Merrill Lynch documents and records. *See id.* at ¶ 4. However, the defendants' employment agreements with Merrill are not identical either in form or in substance. Thomas Wertz and Donald Smyles each signed Account Executive Agreements, but the language of those agreements differs slightly.[3] Defendants Goforth and Michael Wertz each signed the "Financial Consultant Employment Agreement and Restrictive Covenants."[4] As to defendants Jackson and Sinderbrand, however, Merrill Lynch offers no evidence that either defendant signed any employment agreement at the outset or during their employment. Instead, Merrill Lynch offers "Conflict of Interest" forms signed by Jackson and Sinderbrand which state that each agree not to "use or disclose to another any confidential information or business secrets relating to Merrill Lynch," during or after their employment with Merrill Lynch.[5] Defendants Jackson

and Sinderbrand also acknowledged receiving, reading, and accepting an obligation to adhere to the "Guidelines for Business Conduct."[6]

Whatever the substance of each defendant's agreement with Merrill Lynch, Merrill Lynch now argues that the defendants are "actively and deliberately violating the terms of their employment agreements" by soliciting their former clients, Merrill Lynch customers, through telephone calls and mailings paid for by their new employer, PaineWebber. Moulden Aff. at ¶ 10. Merrill Lynch also contends that the defendants are violating their employment agreements by disclosing to PaineWebber client lists; customers' names, addresses, telephone numbers; and other confidential and proprietary information of Merrill Lynch regarding client accounts, in order to persuade those customers to transfer their accounts from Merrill Lynch to PaineWebber. *See* Moulden Aff. at ¶ 15. Defendants, in turn, argue that the recently publicized allegations regarding Merrill Lynch's violations of securities laws, rules, and regulations forced them to pursue other job opportunities, because their clients questioned whether these problems would adversely affect their accounts.

## II. DISCUSSION

The four factors which courts in this Circuit consider when determining whether a plaintiff is entitled to injunctive relief are whether: 1) there is a substantial likelihood that the plaintiff will succeed on the

---

**3.** *See* Pl.'s Ex. A (Thomas C. Wertz agreement) and Ex. B (Smyles agreement).

**4.** *See* Pl.s' Ex. C (Michael Wertz agreement) and Ex. D (Goforth agreement). The employment agreements of Michael Werth and Goforth are identical.

**5.** *See* Pl.'s Ex. G. Goforth signed an identical "Conflict of Interest" agreement.

**6.** *See* Pl.'s Ex. F (Jackson's signed acknowledgment) and G (Sinderbrand's signed acknowledgment). The "Guidelines for Business Conduct" state that Merrill Lynch's assets include client lists. *See* Pl.'s Ex. F (an excerpt from the "Guidelines for Business Conduct.").

merits of its claims; 2) that the plaintiff would suffer irreparable injury if the defendants are not enjoined; 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest favors issuing an injunction. *See CityFed Financial Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir. 1995); *Mova Pharmaceutical Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C.Cir. 1998).

In regard to the first prong of the test for injunctive relief under *CityFed,* the Court finds that plaintiff has demonstrated a substantial likelihood of success on the merits with respect to the actions of Thomas C. Wertz, Donald M. Smyles, Michael C. Wertz, and Denny M. Goforth. The employment agreements of these defendants each provided that he was not to solicit Merrill Lynch clients whom he served, or whose names became known to him through his employment with Merrill Lynch. For example, the Account Executive Agreement of Thomas Wertz stated that:

> In the event of termination of my services with Merrill Lynch for any reason, I will not solicit any of the clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch in any community or city served by the office of Merrill Lynch, or any subsidiary thereof, at which I was employed at any time for a period of one year from the date of termination of my employment.

Donald M. Smyles also signed an Account Executive Agreement, but the terms of his non-solicitation provision differ slightly:

> In the event of termination of my services with Merrill Lynch for any reason, I will [ ] not solicit, for a period of one year from the date of termination of my employment, any of the clients of Merrill Lynch whom I served or other clients

whose names became known to me while in the employ of Merrill Lynch in the office of Merrill Lynch in which I was employed, and who reside within one hundred miles of the Merrill Lynch office in which I was employed.

Finally, Michael Wertz and Denny Goforth each signed identical Financial Consultant Employment Agreements and Restrictive Covenants, with the following provision pertaining to non-solicitation (emphasis added):

> If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose names became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement *"not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:*
>
> a) to transfer from Merrill Lynch to me or to my new employer, or
>
> b) to open a new account with me or with my new employer, or
>
> c) to otherwise discontinue its patronage and business relationship with Merrill Lynch.

■ By the express terms of their employment agreements with Merrill Lynch, Thomas Wertz, Donald Smyles, Michael Wertz, and Denny Goforth each agreed not to solicit their clients, or Merrill Lynch clients whose names they became aware of through their Merrill Lynch employment, for a period of one year from the date of

their termination. Merrill Lynch has provided adequate proof to this Court that Thomas Wertz, Donald Smyles, and Denny Goforth have, in fact, engaged in written solicitation of Merrill Lynch clients since they resigned from Merrill Lynch last week.[7] In particular, Thomas Wertz's letter informed his former client of his decision to leave Merrill Lynch for Paine-Webber, a description of the services PaineWebber could offer his client, as well as enclosing a transfer of account form, and closing with the prayerful "hope that you will choose to continue our relationship at UBS PaineWebber."[8] While Thomas Wertz's employment agreement does not contain a definition of solicitation, as Michael Wertz's and Denny Goforth's employment agreements did, his statement that he hopes their relationship will continue and the fact that the letter was accompanied by account transfer firms can only be construed as a solicitation.[9]

Merrill Lynch has also produced a letter signed by Donald Smyles and Denny Goforth that similarly describes their decision to leave Merrill Lynch and join Paine-Webber, a description of PaineWebber services, and the statement that "we would be honored to have you join us at UBS PaineWebber. Please sign the enclosed [transfer] forms . . . and return in the enclosed postage-paid envelope as soon as possible."[10] This conduct by Mr. Smyles and Mr. Goforth clearly constitutes the type of contact with a client for the proscribed purpose of encouraging or inviting that client to transfer his account from Merrill Lynch to his new employer, Paine-Webber, that is a patent violation of the employment agreement he signed with Merrill Lynch. While, as defendants point out, the solicitation was to a client who presumably lives more than one hundred miles from the Washington, D.C. office where Smyles was employed, and Smyles' employment agreement confines his non-solicitation agreement to those clients who reside within one hundred miles of the Merrill Lynch office where Smyles worked, the Court, based on this evidence, has good cause to believe that Smyles is either prepared to engage, or has already engaged, in similar solicitations of clients who live within one hundred miles of Washington, D.C. Again, the language of the letter clearly solicits the client and encourages him to sever his relationship with Merrill Lynch and transfer his account to PaineWebber. The Court therefore concludes that defendant Donald Smyles, too, has breached his employment agreement with Merrill Lynch.[11]

The Court also concludes that Michael Wertz is in breach of his employment agreement with Merrill Lynch. The terms

---

7. *See* Pl.'s Supp. Ex. 1 (letter from Thomas Wertz to an unidentified client on Paine-Webber letterhead accompanied by Paine-Webber account transfer forms) and Pl.'s Supp. Ex. 2 (letter from Donald Smyles and Denny Goforth on PaineWebber letterhead to an unidentified former client).

8. *Id.*

9. This solicitation falls under the non-solicitation provision of Thomas Wertz's contract as it was addressed to a Washington D.C. address.

10. Pl.'s Supp. Ex. 2.

11. Merrill Lynch has also provided to the Court a list of additional Merrill Lynch clients whom Smyles has contacted by telephone or letter, or both. It is unclear, however, whether these letters were solicitations as copies of the letters sent to those clients were not provided. In regard to the telephone calls placed by Mr. Smyles, Paul Moulden, in a supplemental affidavit to this Court, claims that he has spoken to each of the clients identified in this list, and each stated that Smyles had encouraged him to transfer his accounts to PaineWebber. *See* Pl.'s Supp. Ex. 3.

of Michael Wertz's employment agreement could hardly be more clear: it provided a detailed definition of solicitation and stated that he was not to initiate any contact "of any kind" for the purpose of solicitation. Like Smyles, Merrill Lynch has reason to believe that Michael Wertz has placed telephone calls to Merrill Lynch clients for the purpose of encouraging those clients to transfer their accounts to PaineWebber. Paul Moulden, the administrative manager of the Washington D.C. Merrill Lynch office, stated in his supplemental affidavit that he personally spoke to two Merrill Lynch customers whom Michael Wertz had contacted, and that each of these customers told him that Michael Wertz had urged them to bring their business to PaineWebber.[12] Such communication is clearly prohibited under the terms of the Financial Consultant Employment Agreement and Restrictive Covenants signed by Michael Wertz.

■ Due to the evidence of solicitations that Thomas Wertz, Donald Smyles, Michael Wertz, and Denny Goforth have engaged in after their resignation from Merrill Lynch, the Court concludes that Merrill Lynch has a substantial likelihood of success on the merits of its breach of contract claims against these defendants.[13] The Court, however, is unable to conclude the same in regard to defendants Sinderbrand and Jackson. Merrill Lynch was unable to provide to the Court copies of employment agreements signed by either Mr. Sinderbrand or Mr. Jackson that included non-solicitation provisions. Although both Mr. Jackson and Mr. Sinderbrand signed a Conflict of Interest form that stated that the signee agreed not to "use or disclose to another any confidential information or business secrets relating to Merrill Lynch,"[14] the form never mentions a duty not to solicit. Furthermore, Merrill Lynch has offered no proof that either Mr. Sinderbrand or Mr. Jackson are using or disclosing confidential information or business secrets to PaineWebber following their resignation. The mere fact that the administrative manager, Mr. Moulden, in his supplemental affidavit to the Court, has stated that both Mr. Jackson and Mr. Sinderbrand have solicited clients by telephone or letter and has provided a list of those clients is irrelevant absent an employment agreement. Messrs. Jackson and Sinderbrand are not prevented from doing so by any agreement with Merrill Lynch, and the record in no way shows that Mr. Jackson and Mr. Sinderbrand used confidential information, such as customer lists or other Merrill Lynch records, to do so.[15]

■ The Court also rejects the defendants' argument that their conduct is excusable as Merrill Lynch has, in the past, used customer lists of brokers who have transferred from another brokerage firm to Merrill Lynch. While the Court ac-

---

12. *See* Pl.'s Supp. Ex. 3.

13. The Court also notes that three of these defendants (i.e., Mr. Smyles, Mr. Michael Wertz, and Mr. Goforth) additionally consented to the issuance of a temporary restraining order or preliminary injunction in the event that they breached the non-solicitation and non-disclosure provisions of their employment agreements. *See* Pl.'s Exs. B, C, and D (the respective employment agreements of Smyles, Michael Wertz, and Goforth).

14. *See* Pl.'s Ex. G.

15. *See Prudential Securities., Inc. v. Plunkett,* 8 F.Supp.2d 514, 518 (E.D.Va.1998)(in regard to a non-disclosure provision in a broker's employment agreement, the Court noted that "[w]hile certain facts may support Court-ordered protection of Prudential's customer list, there is authority that an employee who merely recalls customer information from memory has not violated his employment agreement.").

knowledges that this conduct is not uncommon in the securities industry, the Court finds it to be an inadequate basis for invalidating the defendants' duties under valid employment agreements. The defendants do not maintain that the employment agreements are unconscionable, or entered into under fraudulent circumstances. Indeed, Merrill Lynch, and brokerage firms like it, execute these contracts with their brokers in order to "prevent potentially harmful interference with its crucial client base." *Morgan Stanley DW Inc. v. Rothe*, 150 F.Supp.2d 67, 74 (D.D.C.2001). Moreover, the defendants cannot deny that Merrill Lynch, in providing them an office, secretaries, operational support, sales assistants, Merrill Lynch advertising, goodwill, and name recognition, assisted their efforts to obtain clients and build their book of business. Defendants accepted these benefits and the terms of their employment agreements when they joined Merrill Lynch, and Merrill Lynch has every right to expect the defendants to honor it. *See id.*

The Court also finds that Merrill Lynch has made an adequate showing of irreparable harm, even though its showing is not as substantial as its showing of the likelihood of success on the merits. Plaintiff alleges that defendants had responsibility for and access to accounts representing nearly $500 million in assets, and generating $4.1 million in revenues for Merrill Lynch. *See* Pl.'s Compl. at ¶ 20. However, as defendants argue, and plaintiff acknowledges, irreparable injury does not exist where money damages will compensate a complainant. Defendants contend that the lost commission income from defendants' accounts can be easily determined. *See* Defs.'s Opp'n at 23. While this may be so, the Court does not believe that plaintiff's injury is confined to the lost commission from the accounts attributed to defendants at the time of their resignation. As the Fourth Circuit recognized in *Merrill Lynch v. Bradley*, 756 F.2d 1048, 1055 (4th Cir.1985), Merrill Lynch has suffered "irreparable non-compensable harm in the loss of its customers." Moreover, it is impossible to calculate the investments that would have flowed from the customers' accounts. *See Merrill Lynch v. Stidham*, 658 F.2d 1098, 1102 (5th Cir.1981). While the Court does not believe that the departure of six brokers will "throw into turmoil" the Washington D.C. office, the Court concurs with plaintiff's argument that the loss of confidential customer information and the loss of customer goodwill and trust that has been established through the dealings of Merrill Lynch customers with their brokers is a concrete harm that cannot be compensated with money damages. *See Morgan Stanley DW Inc. v. Rothe*, 150 F.Supp.2d at 78.

Finally, the Court does not believe that a temporary restraining order preventing the four defendants —— Thomas Wertz, Donald Smyles, Michael Wertz, and Denny Goforth —— from engaging in conduct that they specifically agreed to avoid when they signed their employment agreements does not cause substantial injury to them. The temporary restraining order entered by the Court does not prohibit the customers of these brokers from transferring their accounts to PaineWebber. Also, it does not stop the defendants from informing their former clients of their new positions or from placing an advertisement in a newspaper or trade paper stating that they have joined PaineWebber. It merely holds the defendants to the promise they made when they voluntarily entered their employment agreements with Merrill Lynch. Moreover, the Court believes the public interest is served by protecting confidential business information and trade

secrets, and enforcing valid contractual provisions, to which parties have voluntarily entered.

For the reasons set forth above, the Court will grant the plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction as to defendants Thomas Wertz, Donald Smyles, Michael Wertz, and Denny Goforth, which will remain in effect for ten (10) days.

SO ORDERED.