## 48493. MATHEWS et al. v. GREINER et al.

CLARK, Judge. "Abracadabra Alakazam" are words wonder workers in necromancy use. Likewise, legal lexicons lure lawyers and judges to seek magic phrases to serve as simplistic solutions. Thus, we find our answers to the three questions presented by this appeal in such judicial incantations as "Lex Loci Contractus," "Alternative Pleading," and "Stare Decisis."

The trio of questions are: (1) Can a nonresident real estate broker sue in Georgia for breach of a contract made in the state where he is licensed when the contract provides for sale of land in Georgia? (2) Does the Civil Practice Act permit a complaint in which counts based upon breach of contract and quantum meruit as to three co-defendants are joined with another count framed in tort contending a conspiracy between the three co-defendants and a fourth defendant to avoid making payment of the amounts claimed for breach of contract? (3) Does the conspiracy count state a claim for relief on a tort when the allegations relate to the breach of a contractual duty?

Appellants were plaintiffs below and will be referred to as such. They filed suit against three Georgia residents and a Delaware corporation, Donald J. Scholz & Co. The Georgians will be

referred to as landowners and the Delaware defendant as Scholz. Averring themselves to be "duly licensed real estate brokers in the State of Virginia" plaintiffs plead they contracted with the landowners "whereby Plaintiffs agreed to attempt, in the State of Virginia, to procure a purchaser who was ready, willing and able to buy, or act in concert with others to buy, upon specified terms" (R. 7) a tract of land in DeKalb County owned by the three Georgians who agreed to be jointly liable to plaintiffs for their services if they were able to procure such purchaser. They allege they secured such buyer in Scholz who is named as co-defendant but only in Count 3 which is framed to plead a conspiracy tort between the landowners and Scholz to deprive plaintiffs of the amount claimed as being due them by their performance of the alleged Virginia contract. The first two counts in which only the three landowners are named as defendants are for breach of contract and in quantum meruit. Count 3 involving Scholz Company is based upon a conspiracy between the four defendants whereby the four have tortiously "entered into a joint venture to develop the property so as to avoid the consummation of the sale of the property to Scholz Company, with the purpose of attempting to avoid the joint obligation of the (other three) defendants to pay the plaintiffs the sum of $74,000 to which they are entitled as commission." (R. 8, 9).

This appeal involves only the third count which was stricken by the trial court sustaining a defense motion to dismiss for failure to state a claim upon which relief may be granted. The necessary trial judge's certificate for immediate review of this order has been provided.

1. We deal first with the question of the validity of the contract because no cause of action could exist for tortious conspiracy to breach an illegal contract. The Georgia law which was in force at the time of the transaction under consideration is contained in Chapter 84-14 of the Annotated Code of Georgia.[1] Therein it

---

[1] All references to Code sections are to the statute prior to passage by the 1973 General Assembly of a complete revision of our law on "Real Estate Brokers and Salesmen." This legislation contained in 1973 Ga. Laws from page 100 through page 126 struck all of Code Ch. 84-14 and substituted a new Chapter with a complete change in the numbering of Code sections.

is expressly stated that "No person, firm, or corporation shall have the right to enforce in any court any claim for commissions, profits, option profits or fees for any business done as real estate broker or salesman, without having previously obtained the license required under the terms of this Chapter." Code § 84-1413 (Ga. L. 1929, pp. 316, 319).

Our court has heretofore in *Dixon v. Rollins,* 120 Ga. App. 557 (171 SE2d 646) and *Beets v. Padgett,* 123 Ga. App. 68 (179 SE2d 560) expressly ruled that a broker doing business in Georgia without the required license had no standing to sue. Furthermore, this taint of illegality would also apply to quantum meruit. *D. L. Stokes & Co. v. McCoy,* 212 Ga. 78 (90 SE2d 404).

The four defendants contend these Georgia cases bar plaintiffs from use of our courts. One of the arguments contained in their briefs asserts that certain evidence obtained by deposition show Georgia to be the situs both of the making and performance of the contract. Similarly appellants refer to the same deposition as proof that the contract was made and performed in Virginia. As this deposition is not a part of this appeal, we cannot consider these factual assertions as we are limited to the record. *Hunt v. Denby,* 128 Ga. App. 523, 526 (4) (197 SE2d 489); *Tingle v. Arnold, Cate & Allen,* 129 Ga. App. 134, 139 (199 SE2d 260) and citations therein.

The record upon which this appeal must be decided consists solely of the complaint, answer, motions to dismiss, and dismissal order limited to the third count accompanied by the requisite review certificate. Paragraph four of the complaint avers that "the plaintiffs are both duly licensed real estate brokers in the State of Virginia." The pertinent portion of paragraph five of the complaint specifically states the agreement to have been made "in the State of Virginia." We must therefore deal with this case as being one in which licensed Virginia brokers have made a contract in Virginia for performance in that state.

The leading Georgia case explanatory of the law of lex loci contractus is *Trustees of Williams Hospital v. Nisbet,* 189 Ga. 807 (7 SE2d 737) where our court said (p. 811): "Where a pleaded contract not only is executed in a foreign State, but contains nothing to indicate by the place of performance or otherwise that it was intended to be construed as a Georgia contract, it will be treated as a contract of the foreign State, and governed by its laws. [Cits.]" The general rule is that it will not be presumed that a contract is illegal. 6 Encyc. of Ga. L. 174, § 115. Additionally

contracts made and performed in another state will be enforced unless such state's laws are contrary to the public policy of the enforcing state. *Sally v. Bank of Union,* 150 Ga. 281 (103 SE 460); *Ulman v. Magill,* 155 Ga. 555 (117 SE 657). This general principle applies to land brokerage contracts. *Pratt v. Sloan,* 41 Ga. App. 150 (152 SE 275).

"A contract should not be held unenforceable as being in contravention of public policy except in cases free from substantial doubt where the prejudice to the public interest clearly appears." 6 Encyc. of Ga. L. 175, § 116. There is no prejudice here to the public interest because our legislature has provided for nonresident brokers to be licensed by comity to do business in Georgia. This was contained in the statute (Code Ann. § 84-1422; Ga. L. 1958, p. 24; 1966, pp. 629, 638) applicable to this case and again in the 1973 revision of our licensing laws on real estate brokers and salesmen in Ga. L. 1973, pp. 112, 113.

We recognize that in the case at bar the Virginia plaintiffs did not obtain a Georgia license but they are not seeking to enforce a Georgia contract. Thus they do not come within our statutory sine qua non of doing business "within any county in this State," Code Ann. § 84-1401.

Having reached the conclusion that the pleadings present a contract made in Virginia to be performed in that state and that enforcement thereof is not in violation of Georgia's public policy we do not regard it necessary to discuss the numerous cases from foreign jurisdictions cited by capable counsel for both sides excepting for Folsom v. Young & Young, Inc., 216 F2d 352 (5th Cir. 1954). There the Fifth Circuit wrote an opinion dealing with a Florida broker's suit for a share of commissions received by a Georgia broker for sale of land in Georgia under a referral contract. The opinion was based upon *Tillman v. Gibson,* 44 Ga. App. 440 (161 SE 630) and concludes "[S]ince no act agreed by it to be done was performed in Georgia, then by the settled law of Georgia, which this court is bound to follow, appellee was not engaged in the business of a real estate broker in Georgia, notwithstanding the location of the land." See also Annotation in 159 ALR 266 on this question generally.

2. Alternative pleading has been permitted since passage of our Civil Practice Act now codified as Title 81A of the Annotated Code. Code Ann. § 81A-108 (e) (2) expressly provides: "A party may set forth two or more statements of a claim or defense *alternately* or hypothetically, either in one count or defense or

in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has *regardless of consistency* and whether based on legal or on equitable grounds or on both." (Emphasis supplied.)

Accordingly the plaintiffs here were entitled to remain in court under their pleading whereby one count proceeded upon a breach of contract and the third count was based upon a tort alleging a conspiracy involving a party other than the contracting parties. It then depends upon the facts produced at the trial for a determination as to whether the proof presented is sufficient to prove a case under any of the theories contained in the complaint.

3. The adjudicated cases which constitute stare decisis dispose of the remaining matters. It is well established that a cause of action may be based on a tort in showing a conspiracy to deprive a real estate broker of commissions due him under a contract. *Luke v. DuPree,* 158 Ga. 590 (124 SE 13); *Kerr v. DuPree,* 35 Ga. App. 122 (132 SE 393); *Rood v. Newman,* 74 Ga. App. 686 (75 SE2d 183); *Barnett v. Eubanks,* 105 Ga. App. 749 (125 SE2d 571); *Woodall v. McEachern,* 113 Ga. App. 213 (147 SE2d 659).

The case of *Rhine v. Sanders,* 100 Ga. App. 68 (110 SE2d 128) is erroneously relied upon by appellees as controlling upon the case at bar. A study of that opinion shows that it is not applicable because it was based upon the individual defendants having acted as corporate officers so that there was no tort conspiracy since the contract was between plaintiff as an employee and the corporation as employer. Furthermore, the opinion differentiates its facts from *Luke v. DuPree,* supra, which we have cited, the court pointing out at page 74 that in the real estate broker case the third party is an intermeddler. Also at page 72 the opinion recognizes the existence of certain classes of contracts which create a relationship whereby an interference might result in a tort. Among these is stated that contractual relationship between principal and agent. Count three of the complaint in the case sub judice shows Scholz was not a party to the original contract in any capacity and for pleading purposes must be considered an intermeddler.

4. The instant appeal is from a judgment sustaining a motion for dismissal of a complaint for failure to state a claim upon which

relief may be granted. It is now well established under the CPA that (a) a complaint is not required to set forth a cause of action but need only set forth a claim for relief; (b) that a complaint is no longer to be construed most strongly against the pleader; and (c) that a motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any set of facts which could be proved in support of this claim. *Oliver v. Irvin,* 230 Ga. 248, 249 (1) (196 SE2d 429); *Mitchell v. Dickey,* 226 Ga. 218, 220 (1) (173 SE2d 695); *Harper v. DeFreitas,* 117 Ga. App. 236 (1) (160 SE2d 260); *Ghitter v. Edge,* 118 Ga. App. 750, 752 (1) (165 SE2d 598); *Herndon v. Aultman-Beasley, Inc.,* 127 Ga. App. 743, 744 (195 SE2d 250). When measured by these standards we find it necessary to rule that the trial court erred in sustaining the motion to dismiss Count 3.

*Judgment reversed. Hall, P. J., concurs. Evans, J., concurs specially.*

ARGUED SEPTEMBER 14, 1973 — DECIDED FEBRUARY 8, 1974.

*Powell, Goldstein, Frazer & Murphy, Frank Love, Jr., Harvey Harkness, Hunter R. Hughes,* for appellants.

*Patrick, Sidener, Bryant & Hamner, Griffin Patrick, Jr., Joseph C. Miller, Troutman, Sanders, Lockerman & Ashmore, Robert H. Forry, Ezra H. Cohen,* for appellees.

EVANS, Judge, concurring specially. I concur fully in this opinion, except for the first paragraph. No doubt I would concur in it, too, if I only knew what it means.

ON MOTION FOR REHEARING.

CLARK, Judge. By motion for rehearing appellees argue our original opinion was in error as violative of our state's public policy as expressed in Code Ann. § 84-1413. Additionally, it is contended we overlooked the cases of *Dixon v. Rollins,* 120 Ga. App. 557 (171 SE2d 646) and *Jalonick v. Greene County Oil Co.,* 7 Ga. App. 309 (66 SE 815). As the adjournment of the term left insufficient time for complete study of these contentions the original opinion was withdrawn. Now, after reconsideration and study of the points presented by the rehearing motion, we have decided the original should be reinstated because the appeal was correctly decided therein.

1. Our ruling is not contrary to Georgia public policy. The record on this appeal shows plaintiffs did not do any real estate business "within any county in this State" that being the statutory

prerequisite stated in Code Ann. § 84-1401. Our statute requires a Georgia license to engage in the real estate business in Georgia but the record here does not contain any averment showing plaintiffs did business within the boundaries of our state.

The Georgia licensure statute does not require a real estate broker who is licensed by and performs a brokerage contract in another state to be licensed here. The statute requires the broker to be licensed only in cases where the broker performs his services under the contract "within any county in this State." Our statute recognizes that activities in connection with the sale or leasing of real property deals with services and seeks to insure that the individuals performing such services within Georgia are trustworthy and reliable. Our law does not focus on the situs of the real property. In fact the situs of the real property is incidental. This is evidenced by the fact that the statute does not exempt from coverage brokerage transactions performed in Georgia where the realty is outside of Georgia. *Tillman v. Gibson,* 44 Ga. App. 440 (161 SE 630).

2. The case of *Dixon v. Rollins,* 120 Ga. App. 557 (171 SE2d 646) was cited in our original opinion. We regarded the factual statement at page 559 of *Dixon v. Rollins* as differentiating the instant case from that ruling. It is there pointed out that "It is undisputed that the claimant *is not* and has never been licensed as a real estate broker, and that he bases his claim on performance on his part by his acts both *within* and without the State, while at all times he was *a resident of this State* and *maintained a permanent business address within this State."* (Emphasis supplied.) This differs from the instant case where Virginians licensed as real estate brokers in their domiciliary state sue upon a contract made in their home state. The facts that (1) they contracted with Georgians and (2) that the land they contracted to sell was in Georgia do not deprive them of their right to resort to Georgia courts when they have not in fact engaged in the real estate business in Georgia. *Pratt v. Sloan,* 41 Ga. App. 150, 153 (152 SE 275); *Tillman v. Gibson,* 44 Ga. App. 440, supra.

3. The case of *Jalonick v. Greene County Oil Co.,* 7 Ga. App. 309 (66 SE 815) is not applicable in that insurance contracts covering property seek to indemnify the insured against certain risks to the property so that a substantial portion of the performance of the insurance contract must take place in the situs of the property. The *Jalonick* case was decided in 1909 when the Civil Code of 1895 was effective. As is pointed out in the appellants' brief, "Sections

2054 and 2055 of the Georgia Civil Code of 1895 prohibited solicitation of insurance in Georgia on behalf of any unlicensed insurance company, and § 2072 thereof prohibited any person owning property in Georgia from having it insured other than by an insurance company duly licensed in Georgia. In light of the public policy established by the foregoing statutes, the court was obligated to hold that the public policy evidenced by such insurance statutes required the Texas insurance company to have the requisite Georgia insurance certificate prior to its insuring property located in Georgia. Not having such license, it could not enforce its claim for unpaid premiums." It should also be noted that property insurance is in no way similar to the real estate business as premiums are determined according to location, type of structure, and similar factors affecting the risk.