**BARNES GROUP, INC.,**
**Plaintiff-Appellant,**

v.

**James W. HARPER, Defendant-Appellee.**

**No. 80–7917.**

United States Court of Appeals,
Fifth Circuit.
Unit B

Aug. 10, 1981.

Rehearing Denied September 11, 1981.

James M. Thomas, Savannah, Ga., for plaintiff-appellant.

Arnold C. Young, Ralph O. Bowden, III, Savannah, Ga., for defendant-appellee.

Appeal from the United States District Court for the Southern District of Georgia.

Before HILL, FAY and HENDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Appellant Barnes Group, Incorporated [Barnes] brought suit against its former salesman, appellee James W. Harper, alleging breach of a restrictive covenant contained in Harper's employment contract. The district court has determined that the covenant is void under controlling state law and has denied Barnes' prayer for injunctive relief. We reverse and remand.

## I.

The facts are not in significant dispute. Harper commenced employment with a division of Barnes, a Delaware corporation with principal offices in Connecticut, in August 1968 as a commissioned sales agent. The division that employed Harper was engaged in the nationwide marketing of some 12,000 items including screws, nuts, bolts, automobile replacement parts and the like. This line of business is highly competitive, in part owing to the lack of product differentiation. Accordingly, the contact between salesman and customer with resulting good will, is absolutely critical to business success. Indeed, the Barnes' division in which Harper worked maintained no house contacts, transacted no catalogue sales, and looked to its salesmen as its sole customer contact. Barnes without question invested some time in training Harper to work the sales territory assigned to him, although the exact nature and value of this training is the subject of differing testimonial accounts.[1]

The terms of Harper's employment by Barnes were to be governed by an employment contract entitled "Salesman's Agreement." Of particular concern here are two paragraphs of the contract:

---

1. Barnes, for example, points to evidence of several weeks of fairly intensive training of Harper to accede to the sales territory. The training included introducing Harper to past customers, evening instruction, and a study of the division's special sales technique. Harper minimizes all of this. He did not recall any introduction to Barnes' customers and, in fact, characterized his sales territory as "absolute dead, cold territory" when he first took the position.

### 1. *Territory*

The Company hereby appoints the Salesman the Company's sales representative in its Territory No. *196–4.* Said territory consists of certain specific or generally described accounts, which are hereby assigned to the Salesman, located in a defined geographical area. Said accounts are set forth or described in a certain document on file in the Company's office, called "Territory Description," bearing the Salesman's name and territory number. Said Territory Description contains also a list of or description of accounts, if any, which, although within the aforesaid geographical area, are excluded from the Salesman's territory. The accounts which are included in the Salesman's territory are hereinafter referred to as "territory." If said Territory Description shall include any general classification(s) of accounts declared to be "Open to all salesmen", the accounts within such classification(s) shall not be included in the Salesman's territory unless and until so included by supplemental agreement. The aforesaid Territory Description is now in existence and is incorporated herein by reference and is hereby made a part of this agreement to the same extent as if fully rewritten herein. A copy of said Territory Description has been delivered to the Salesman who hereby acknowledges its receipt.

. . . .

### 6. *Restrictive Covenant*

The salesman agrees that (1) if he shall voluntarily leave the Company's employ hereunder, or (2) if he shall be discharged by the Company for just cause, he will not, for a period of two (2) years thereafter, sell or attempt to sell any products of the same or similar kind as those sold by the Company, to any of the customers to whom he made one or more sales for the Company within the last two years of his employment. The Salesman agrees that his promise herein made so to refrain from selling or attempting to sell means

that he will not, directly or indirectly, either as an individual on his own account or as a partner, employee, agent or salesman of or for any person, firm, association or corporation, or as an officer, director or stockholder of any closely-held corporation as hereinafter defined, engage in selling or attempting to sell any of said products to any of the customers hereinabove designated. This covenant shall not be deemed violated by the Salesman's engaging in the business of a manufacturer or retailer of said products, but is shall be deemed violated by any sale of said products to any of said customers by the Salesman in or for a business combining retail and wholesale sales if the wholesaling is a substantial part of such combined business. For the purposes of this covenant automobile manufacturers and their franchised new-car dealers shall not be considered to be in the business of wholesaling.

The term "closely-held corporation", as used herein, shall be any corporation in which the Salesman or his wife, child or parent owns, directly or indirectly, more than ten per cent (10%) in value of the outstanding stock, or a corporation in whose management the Salesman is an active participant.

This covenant on the part of the Salesman is of the essence of this agreement; it shall be construed as independent of any other provision in this agreement, and the existence of any claim or cause of action of the Salesman against the Company, whether predicated on this agreement or otherwise, shall not constitute a defense to the enforcement by the Company of this covenant. . . .

Plaintiff's Complaint, Vol. I, at 1 (Exhibit A). The "Territory Description," referred to in paragraph 1 of the contract, listed the 16 counties[2] in southeastern Georgia to which Harper was assigned.

Harper's success was significant. His sales volume by 1977 had reached $170,000. Two years later his volume had surpassed

---

**2.** Appling, Bryan, Bulloch, Candler, Chatham, Effingham, Evans, Glynn, Jenkins, Liberty, Long, McIntosh, Screven, Tattnall, Toombs, and Wayne counties were listed.

$220,000 and his net commission had reached nearly $46,000. But in June 1980 Harper resigned his position and opened a business called Harper Distributing Company. He then began selling to his customers some of the same products he had sold to them as a Barnes salesman within the prior two years. Since Harper left the employ of Barnes, the latter has suffered a dramatic sales decline in what formerly was Harper's sales territory: monthly volume dropped to approximately six percent of its former average.

## II.

Barnes brought this action, invoking the diversity jurisdiction, 28 U.S.C. § 1332(a) (1976), of the United States District Court, Southern District of Georgia, to pray for specific performance of the contractual covenant at issue and to demand certain legal relief. The court held a hearing and on August 20, 1980, entered a temporary restraining order to enjoin Harper's sale of products when such sale would contravene the terms of the restrictive covenant. Following a second hearing held on August 28, 1980, the district court dissolved the temporary restraining order and denied the motion for preliminary injunctive relief.

The district court based its action upon a view that the territorial limitation included in Harper's employment contract is, as a matter of Georgia law, unreasonable. From that order, and from the denial of its motion for reconsideration, see Fed.R.Civ.P. 59, Barnes has appealed to this Court.

## III.

■ The district court held the restrictive covenant at issue "fatally defective" because it failed to include an "explicit" territorial description. The court rejected Barnes' contention that paragraph 1 of the contract, quoted *supra*, which identified Harper's territory as "196–4" and which incorporated the "Territory Description" by reference,[3] was sufficiently explicit under Georgia law.[4] A factor that weighed heavily in the court's analysis on this score was the language in paragraph 6 stating that the covenant "shall be construed as independent of any other provision in this agreement . . . ." That, in the court's eyes, militated against reading paragraphs 1 and 6 together. Similarly, the district court rejected the argument that the limitation, in practical effect, was extremely tailored in its territorial aspect since it only embraced actual customers of Barnes serviced by Harper within two years of his resignation. To sustain such an argument, the court held, would require it to imply the territorial reach of the covenant. Finally, the district court termed the 16-county restriction "clearly overbroad" inasmuch as that territory including several counties in which Harper did no business. We have determined that the district court, in ruling as indicated above, has misapplied controlling authority. We turn now to explain our reasons for so holding.

## IV.

■ We are bound to apply Georgia law in this case, see note 4 *supra*, since the basis for federal jurisdiction is diversity of citizenship. See *Green v. Edmands Co.*, 639 F.2d 286, 289 (5th Cir. 1981). A "trend" in the area of restrictive covenants is somewhat difficult to divine in Georgia in light of a high precedential mortality rate. See e. g., *Barry v. Stanco Communications Products, Inc.*, 243 Ga. 68, 252 S.E.2d 491 (1979), *overruling in part, Taylor Publishing Company v. Jones*, 226 Ga. 832, 177 S.E.2d 655 (1970); *Artistic Ornamental Iron Co. v. Wilkes*, 213 Ga. 654, 100 S.E.2d 731 (1957); *Orkin Exterminating Co. v. Dewberry*, 204 Ga. 794, 51 S.E.2d 669 (1949); *Fuller v.*

---

**3.** The Record does, in fact, contain a document entitled "Territory Description," Plaintiff's Complaint, Vol. I, at 1 (Exhibit B), and a boilerplate acknowledgment of its receipt.

**4.** Although paragraph 8 of the employment contract states that it "shall be construed in accordance with the laws of the State of Ohio," Georgia law holds that restrictive covenants, which contravene the public policy of the State, are construed under Georgia law if they are to be applied in Georgia. *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 238 S.E.2d 368 (1977).

*Kolb*, 238 Ga. 602, 234 S.E.2d 517 (1977), *overruling in part, Kirshbaum v. Jones*, 206 Ga. 192, 56 S.E.2d 484 (1949). Clearly and consistently resounding from the relevant case law, however, is the principle that restrictive covenants "ancillary" to employment contracts are in "partial restraint of trade"[5] and are thus sustained only "if strictly limited in time and territorial effect and otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee." *Purcell v. Joyner*, 231 Ga. 85, 86, 200 S.E.2d 363, 365 (1973). *See also Marcoin, Inc. v. Waldron*, 244 Ga. 169, 259 S.E.2d 432, 433 (1979); *Fuller v. Kolb, supra; Howard Schultz & Associates, Inc. v. Broniec*, 239 Ga. 181, 236 S.E.2d 265 (1977). These covenants, then, must be reasonable, not perfect, given the surrounding facts. *See Edwards v. Howe Richardson Scale Co.*, 237 Ga. 818, 820, 229 S.E.2d 651, 653 (1976) ("Although Howe has not shown that it is doing business everywhere within a fifty mile radius of Albany, Georgia, we think it has shown substantial contracts in the territory generally, and that, under the circumstances of this case, the restraint imposed is reasonably required to protect the interests of the employer.").

■ The tendency of many drafters, which the courts earnestly have sought to change, has been to prepare restrictive covenants laden with geographic overkill. But even in the face of such covenants, *e. g., Howard Schultz & Associates v. Broniec*, 239 Ga. 181, 186, 236 S.E.2d 265, 269 (1977), a rule of reason—not of per se applicability—has obtained.[6] *See Barry v. Stanco Communications Products, Inc., supra*, 243 Ga. at 71, 252 S.E.2d at 494 (overruling cases "to the extent that they hold a covenant not to compete which applies to the whole state is always void and will never be enforced"). The Supreme Court of Georgia has stated in unequivocal terms that "the interests of the state [are] better served by judging the reasonableness of a territorial restraint" on a case-by-case basis. *Id.* at 71, 252 S.E.2d at 494.

■ Several decisions aid our study of the particular covenant involved here. In *Barry v. Stanco Communications Products, Inc., supra*, the Georgia court held that "restrictions . . . which relate to the territory in which the employee was employed are generally upheld." *Id.* at 70, 252 S.E.2d at 493. Earlier, in *Howard Schultz & Associates, supra*, the court had explained the logic behind this:

> [T]he justification for this difference in treatment is that a court will accept as prima facie valid a covenant related to the territory where the employee was employed as a legitimate protection of the employer's investment in customer relations and good will. Thus a court will enforce an agreement prohibiting an employee from pirating his former employer's customers served by the employee, during the employment, at the employer's direct or indirect expense.

239 Ga. at 183–84, 236 S.E.2d at 268. We think this language is directly applicable to the facts at hand. It is true that the actual territory covered by the covenant—the 16 counties—was incorporated by reference[7] into the employment contract. The evidence before the district court, it is also true, showed that Harper only serviced customers in 14 of the 16 counties in the two years immediately prior to his resignation. But the territory, referred to by number in paragraph 1 of the contract, is clearly the geographic reference point for the terms of

---

5. *Cf.* Georgia Const., Art. III, sec. 8, par. 8; Georgia Code Ann. § 20–504.

6. This is not true of a covenant that is wholly without territorial limitation. Such a covenant *is* per se unreasonable. *Guffey v. Shelnut & Assoc., Inc.*, 247 Ga. 667, 278 S.E.2d 371 (1981).

7. This case does not confront the Court with any questions concerning the incorporation by reference. Thus, the problem in *Colonial Life & Acc. Ins. Co. v. Byrd*, 227 Ga. 198, 179 S.E.2d 746 (1971), where the employer argued that an employee "manual" that permitted an employee to sell anywhere in the State sufficiently defined the territory, is not present here.

the covenant contained in paragraph 6.[8] Moreover, the covenant makes absolutely no attempt to prevent a former employee from selling his wares in any of the subject counties. Rather, the covenant prevents the former employee "from pirating his former employer's customers served by the employee, during the employment," 239 Ga. at 184, 236 S.E.2d at 268. To be sure, this restraint is no "larger or more stringent than necessary for the protection of the employer," *Purcell v. Joyner, supra,* 231 Ga. at 87, 200 S.E.2d at 365, for it only prevents Harper from soliciting these companies with whom he transacted business at Barnes' "direct or indirect expense," 239 Ga. at 186, 236 S.E.2d at 268.

■ Several obvious ills inhere in restrictive covenants which either have no territorial limitation, or have a limitation that is overbroad or vague. Such covenants, as indicated above, tend to shackle a former employee to an extent far greater than the covenantee's needs dictate. An employer's superior position—in the absence of proper tailoring and true need—cannot be sustained under the law of Georgia. A further problem associated with overbroad or non-existent territorial limitations "is [lack] of notice to the former employee." *Fuller v. Kolb, supra,* 238 Ga. at 604, 234 S.E.2d at 518. But having recognized these potential shortcomings in restrictive covenants, we find no such problems in the one at hand. Barnes' interests were adequately protected—not overprotected—by the territorial restriction before us. And it is inconceivable that a covenant so explicit as this one could have confronted Harper with any "notice" problems cognizable by the courts. *Cf. Marcoin, Inc. v. Waldron, supra.*

### V.

We, then, reverse the order of the district court and remand the case for proceedings consistent with our opinion. We do not,

however, order the district court to enter the relief sought by Barnes. Such relief should only be granted following full consideration by the district court of all equitable claims and defenses of the parties.

REVERSED and REMANDED.

---

**8.** The district court was troubled by language in the contract calling for the covenant to be construed "as independent of any other [contractual] provision." We are not. The point of such a clause, no doubt, was to ensure that the employer would not be held to have waived any objection to breach of the restrictive covenant by its failure to fire the employee and declare him in breach on account of any technical breach that employee might have committed during his service.