**SALSBURY LABORATORIES, INC., Plaintiff,**

v.

**MERIEUX LABORATORIES, INC., et al., Defendants.**

**Civ. No. 87–56–ATH.**

United States District Court,
M.D. Georgia,
Athens Division.

March 23, 1988.

Peter D. Murray and John P. White, Cooper, Dunham, Griffin & Moran, New York City, and Gary B. Blasingame and Andrew J. Hill, III, Athens, Ga., for plaintiff Salsbury Laboratories, Inc.

Kenneth L. Millwood and Joyce B. Klemmer, Smith, Gambrell and Russell, Atlanta, Ga., for defendant Merieux Laboratories, Inc.

FITZPATRICK, District Judge.

Plaintiff Salsbury Laboratories, Inc. (Salsbury) brought this action in July of 1987 alleging misappropriation of trade secrets, breach of contract, interference with contract, and unfair competition. On August 26, 1987 the court denied Plaintiff's request for a preliminary injunction. The case was then tried before the court sitting without a jury in October of 1987. At the conclusion of the trial, Defendants moved to dismiss those counts of Plaintiff's Complaint which alleged breach of contract and interference with contract, claiming that the non-disclosure and non-use covenants in the contracts were void under the constitutional, statutory, and common law of Georgia. The court heard oral argument on Defendants' Motion on December 3, 1987. The court's findings of fact and conclusions of law as to this Motion are set forth below.[1]

## I. FINDINGS OF FACT

Salsbury is a leading developer and producer of veterinary products in the United States. Salsbury maintains its headquarters and primary research and development facilities in Charles City, Iowa. De-

---

1. This Order addresses only those issues raised in Defendants' Motion to Dismiss and does not address the misappropriation of trade secrets' count which remains pending before the court. Accordingly, the court limits its findings of fact and conclusions of law in this Order to those facts and conclusions which are necessary to the determination of the contract issues.

fendants Donald Hildebrand and Jack Berg are former employees of Salsbury. Both of these Defendants now work for the corporate Defendant, Merieux Laboratories, Inc. (Merieux). Merieux, which maintains its corporate headquarters in Athens, Georgia, was set up as a wholly-owned subsidiary of Rhone–Merieux Laboratories–France, an international developer and producer of veterinary products. Merieux competes with Salsbury in the production and sale of animal products.

In 1966 Defendant Hildebrand began working as a Biologics Production Technician for Fromm Laboratories, Inc., a subsidiary of Salsbury. In 1973 Salsbury transferred Hildebrand to its headquarters in Charles City, and promoted him to Biologics Production Manager. On October 27, 1975, Hildebrand signed a "Patent Assignment and Trade Secrecy Agreement" which prohibited him from disclosing Salsbury's trade secrets and confidential information at any time during or after his period of employment with Salsbury. Hildebrand signed the Agreement in Iowa, and both parties to the Agreement were citizens of Iowa at the time the Agreement was executed. By 1982 Salsbury had promoted Hildebrand to the position of Director of Biological Operations. In this position Hildebrand oversaw the production of numerous veterinary products that were being developed at Salsbury.

In the fall of 1984, Hildebrand was offered the general manager's position at Merieux Laboratories. In late October of 1984, Hildebrand decided to accept the offer. He gave his notice of resignation to Salsbury on November 2, 1984, and was asked to leave Salsbury permanently that same day. Hildebrand began his employment with Merieux two weeks later.

Defendant Berg began working for Salsbury as a Biologics Production Supervisor in November of 1976. On November 23, 1976 Berg signed a "Patent Assignment and Trade Secrecy Agreement" which was identical to the Agreement signed by Hildebrand in October of 1975. This Agreement prohibited the disclosure of Salsbury's trade secrets or confidential information at any time during or after Berg's period of employment with Salsbury. Berg signed the Agreement in Iowa, and both parties to the Agreement were citizens of Iowa at the time of its execution.

In January of 1983, Berg moved to Salsbury's subsidiary, Fromm Laboratories, Inc. In the fall of 1985, Hildebrand contacted Berg in an attempt to persuade Berg to come to work for Merieux. During two separate meetings in October of 1985, Hildebrand and Berg discussed the possibility of Berg's becoming the Operations Manager at Merieux. On January 3, 1986 Berg resigned from Fromm Laboratories, and shortly thereafter, took a position with Merieux.

During their respective periods of employment with Salsbury, both Hildebrand and Berg played key roles in the development of a vaccine that prevents a respiratory and reproductive disease in poultry caused by the bacterium Mycoplasma gallisepticum (MG). Salsbury spent several years developing this commercial vaccine, and in February of 1982, the United States Department of Agriculture (USDA) issued a license to Salsbury authorizing the production and sale of the vaccine under the trademark MG–BAC. At the time it received its USDA license, Salsbury was the only company in the United States producing a commercial inactivated MG vaccine.

In October of 1984, Salsbury improved its MG–BAC vaccine. Both Hildebrand and Berg worked on the improvements. The 1984 improvements saved Salsbury approximately $100,000.00 per year in the production of the vaccine. Salsbury informed the USDA of the improvements and received approval to sell the new and improved vaccine.

Since joining Merieux, both Hildebrand and Berg have been influential in working on and overseeing the development of an inactivated MG vaccine which is similar to Salsbury's MG–BAC. The MG vaccine developed at Merieux is aimed at curing the same respiratory and reproductive disease in poultry that MG–BAC is aimed at curing. On April 16, 1987, the USDA issued

Merieux a license to produce this inactivated vaccine under the trademark Gallimune.

Plaintiff claims that Defendants Hildebrand and Berg breached their Patent Assignment and Trade Secrecy Agreements by using the trade secret and confidential information they obtained while at Salsbury to produce an MG vaccine at Merieux. Defendants claim that these Agreements are unenforceable under Georgia law because they are overly broad and have no time limitations. The parties have requested that the court issue a ruling on Defendants' Motion to Dismiss prior to ruling on the misappropriation of trade secrets claim. The parties contend, and the court agrees, that a ruling on the Motion to Dismiss will give the parties guidance as to what issues should be addressed in the post-trial pleadings.[2]

## II. CONCLUSIONS OF LAW

The issue before the court concerns the validity of paragraphs one through three of the Patent Assignment and Trade Secrecy Agreements signed by Defendants Hildebrand and Berg during their terms of employment at Salsbury Laboratories. Paragraphs one through three provide as follows:

1. THAT I shall at no time use independently of my work for the Laboratories, nor at any time divulge to others information regarding any of the records, data, methods, processes, inventions, business plans, programs and/or practices acquired by me during my employment and held, owned and conceived on behalf of and as such identified by the Laboratories.

2. THAT if during any such employment I conceive or perfect a development, improvement, invention, design or discovery of any description whatsoever applicable to any chemical compound, product, working material, process, method, system, device, machine or design, whether of patentable or unpatentable nature, then or thereafter usable or actually used by the Laboratories, then every such development, improvement, invention, design or discovery shall automatically become the property of the Laboratories.

3. THAT I shall promptly upon conception of any such development, improvement, invention, design or discovery disclose all the particulars of the same to the responsible officers of the Laboratories; that I shall consider them as trade secrets of the Laboratories; and that I shall neither reveal the same nor permit them to be revealed in any manner to third persons without written authority of the Laboratories.

In determining whether the Agreements are valid and enforceable, the court must decide whether the law of Iowa or the law of Georgia should be controlling on the question of validity.

### A. State Law

■ Subject matter jurisdiction in this suit is based on diversity of citizenship. When considering a choice of law question, a federal court sitting in diversity is bound by the forum state's conflict of laws rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Gen. Tel. Co. of the Southeast v. Trimm*, 706 F.2d 1117 (11th Cir.1983). In contract cases involving a conflict of laws question, Georgia courts have adopted the traditional rule that *lex loci contractus* shall control. *Gen. Tel. Co. of the Southeast v. Trimm*, 252 Ga. 95, 311 S.E.2d 460 (1984). Under this rule, " '[contracts] are to be governed as to their nature, *validity and interpretation* by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case ... the laws of that sister State will be applied....' " *Id.* at 95, 311 S.E.2d at 461, (quoting *Tillman v. Gibson*, 44 Ga.App. 440, 442–43, 161 S.E. 630, 632 (1931) (emphasis added)).

In determining where a contract was made, "the court must determine where the

---

**2.** The court has requested that both parties submit post-trial findings of fact and conclusions of law for the court to consider in making a final ruling in this case.

last act essential to the completion of the contract was done." *Id.* at 95, 311 S.E.2d at 461; *see also Continental Casualty Co. v. Synalloy Corp.*, 667 F.Supp. 1523, 1534 (S.D.Ga.1983). The "last essential act" noted in *Trimm* refers to an act going to the execution of the contract, not an act going to the performance of the contract. *Najran Co. v. Fleetwood Enter., Inc.*, 659 F.Supp. 1081, 1095 n. 3 (S.D.Ga.1986).[3] In the instant case, all the parties to the Agreements were residents of Iowa at the time the Agreements were executed. The parties signed the Agreements in Iowa before an Iowa notary public. Moreover, Hildebrand and Berg performed under the Agreements in Iowa for several years while they were employees of Salsbury.

■ Defendants argue that in the instant suit, the law of the place of performance should govern, not the law of the place of execution. Under Defendants' theory, Georgia is the place of performance. They contend that Salsbury intended that these Agreements be performed in any state in which the signator is residing at the time enforcement is sought. Defendants argue that since they now are residents of Georgia and are performing under the Agreements in Georgia, the substantive law of Georgia should be controlling in determining the validity of the Agreements.[4]

■ The court, however, is not persuaded by Defendants' position. Georgia courts have held that the law of the state where a contract is made will govern unless the parties have contemplated that the contract will be performed in another state. *E.g., Trimm*, 252 Ga. at 95, 311 S.E.2d at 461; *Mathews v. Greiner*, 130 Ga.App. 817, 204 S.E.2d 749 (1974). Only when the parties have contemplated performance in another state will the law of that state be controlling in determining the validity of the contract. In *Trimm, supra*, the Supreme Court of Georgia stated:

> Where a pleaded contract not only is executed in a foreign State, but contains nothing to indicate by the place of performance or otherwise that it was intended to be construed as a Georgia contract, it will be treated as a contract of the foreign State, and governed by its laws.

*Trimm*, 252 Ga. at 96, 311 S.E.2d at 462, (quoting, *Trustees of Williams Hospital v. Nisbet*, 189 Ga. 807, 811, 7 S.E.2d 737, 740–41 (1940)); *see also Tillman*, 44 Ga. App. at 442–43, 161 S.E. at 632 (where it appeared from the contract itself that it was to be performed in another state). Moreover, in applying the conflict of laws rules of Georgia, other district courts sitting in diversity in this State have noted that contemplation between the parties to a contract is an important element that should be present if the law of the place of performance is to be applied. *See, e.g., Hayes v. Irwin*, 541 F.Supp. 397, 414 (N.D. Ga.1982), *aff'd*, 729 F.2d 1466 (11th Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 185, 83

---

**3.** The court notes that in *Residential Indus. Loan Co. v. Brown*, 559 F.2d 438, 440 (5th Cir.1977), the former Fifth Circuit Court of Appeals stated that in deciding where a contract was made, "the determinative location under Georgia law is not where it is executed, but rather where it is delivered as consummating the bargain." In the case *sub judice*, the Patent Assignment and Trade Secrecy Agreements were executed in Iowa, and the bargain was consummated in Iowa.

**4.** In contrast to most jurisdictions, Georgia courts distinguish between trade secrets and confidential information. *See e.g., Howard Schultz & Assocs. v. Broniec*, 239 Ga. 181, 236 S.E.2d 265 (1977). Under Georgia law, a trade secret "is a plan, process, tool, mechanism, or compound, known only to its owner and those of his employees to whom it must be confided

in order to apply it to the uses intended." *Thomas v. Best Mfg. Corp.*, 234 Ga. 787, 789, 218 S.E.2d 68, 71 (1975) (quoting 43 C.J.S. *Injunctions* § 148, p. 750 (1945)). Trade secrets are protectable even absent a valid contract restricting their disclosure. *Thomas*, 234 Ga. at 789, 218 S.E.2d at 71. In contrast to trade secrets, confidential information may include almost any other business information considered important to the employer. Georgia courts will protect confidential information only through the terms of a valid and enforceable contract, or in some cases, under the implied terms of a confidential relationship. *Wesley–Jessen, Inc. v. Armento*, 519 F.Supp. 1352, 1361 (N.D.Ga.1981); *Durham v. Stand–By Labor, Inc.*, 230 Ga. 558, 198 S.E.2d 145 (1973); *see generally*, Quittmeyer, *Trade Secrets and Confidential Information Under Georgia Law*, 19 Ga.L.Rev. 623, 624–25 (1985).

L.Ed.2d 119 (1984) ("if the parties contemplated at the time of making the contract that the contract would principally have effect in another state, that latter state's law will apply").

The Patent Assignment and Trade Secrecy Agreements in question do not show on their face that the parties intended to perform under these Agreements in Georgia. Defendants Hildebrand and Berg do not claim that they intended to perform under the Agreements in Georgia at the time the Agreements were executed, nor do these Defendants claim that they contemplated working in the State of Georgia at the time they signed the Agreements. In fact, at the time of the execution of the respective Agreements in 1975 and 1976, Defendant Merieux Laboratories, Inc. was not in existence. Therefore, Defendants' argument that Georgia law must apply because Georgia is the place of performance is without merit.

■ The conflict of laws inquiry, however, does not end here. Although Georgia courts may apply the laws of a sister state if the contract was executed in that state, under the rule of *lex loci contractus*, Georgia courts will not apply the laws of a sister state if those laws are "contrary to public policy or prejudicial to the interests of Georgia." *Rohner, Gehrig & Co. v. Capital City Bank*, 655 F.2d 571, 579 (5th Cir. Unit B 1981); *see also Mktg. and Research Counselors, Inc. v. Booth*, 601 F.Supp. 615 (N.D.Ga.1985) (court refused to apply law of state contemplated in parties' choice of forum clause since that law violated the public policy of Georgia); *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 238 S.E.2d 368 (1977) (law of jurisdiction chosen by parties would not be applied where such law contravened Georgia's public policy). Thus, even where Georgia's conflict of laws rules dictate that the law of a sister state should apply, a district court sitting in diversity should apply Georgia law where

application of the foreign law would result in a decision that either was contrary to Georgia's public policy or was prejudicial to the citizens of this State. *See Ryder Truck Lines, Inc. v. Goren Equip. Co.*, 576 F.Supp. 1348, 1354 (N.D.Ga.1983).

Defendants argue that the Agreements in question are contrary to Georgia's public policy favoring competition because they attempt to prevent Defendants from disclosing an unreasonably broad scope of information for an unlimited time period. Defendants rely on Georgia case law, statutory law, and Georgia's Constitution to support their position that the Agreements are in general restraint of trade and, are therefore, unenforceable. Article III, section six of the State Constitution provides that any contract which is intended to have the effect of defeating or lessening competition, or encouraging a monopoly, is unlawful and void. GA. CONST. art. III, § 6, ¶ 5. O.C.G.A. § 13–8–2 states that contracts in general restraint of trade are contrary to the public policy of the State of Georgia. In addition, courts in this State have held that a non-compete or non-disclosure covenant in an employment contract which lacks a time limitation is unreasonable and in general restraint of trade. *See, e.g., Prudential Ins. Co. of America v. Baum*, 629 F.Supp. 466, 470 (N.D.Ga.1986); *Wesley–Jessen, Inc.*, 519 F.Supp. at 1362; *Thomas*, 234 Ga. at 787, 218 S.E.2d at 70.[5]

■ Although contracts in general restraint of trade are contrary to the public policy of this State, Georgia courts will enforce non-disclosure covenants that are reasonable and only in partial restraint of trade. *See Interstate Sec. Police, Inc., v. Citizens and S. Emory Bank*, 237 Ga. 37, 39, 226 S.E.2d 583, 585 (1976). In addition, the public policy of this State favors preventing employees from exploiting confidential information which they obtained while working for a former employer, and which they have agreed not to disclose.

---

5. This court notes that the Eleventh Circuit has enforced a non-disclosure covenant contained in an employment contract even though the covenant was not limited in duration. *Nordson Corp. v. Plasschaert*, 674 F.2d 1371 (11th Cir. 1982). The *Nordson* court applied Ohio law instead of Georgia law to enforce a covenant which prohibited the disclosure of confidential information in perpetuity. The *Nordson* decision was criticized in *Mktg. and Research Counselors, Inc. v. Booth*, 601 F.Supp. 615 (N.D.Ga. 1985).

*Wesley–Jessen*, 519 F.Supp. at 1361. In *Wesley–Jessen* the court noted:

> when a duty has been imposed upon an employee pursuant to contract not to disclose confidential business information upon termination of employment, public policy is swung in favor of protecting these commercial intangibles and of preventing unfair methods of exploiting them in breach of duty.

*Id.; see also Rollins Protective Services Co. v. Palermo*, 249 Ga. 138, 141, 287 S.E.2d 546, 550 (1982) ("[p]ublic policy supports the protection of an employment agreement imposing a duty on an employee to refrain from disclosing confidential business information of the employer").

Thus, Georgia's public policy would seem to support the positions of both Plaintiff and Defendants. The Georgia courts, however, have not addressed the issue of whether Georgia's public policy is violated by a non-disclosure covenant, which has no time limitation, but which is found in a patent assignment and trade secrecy agreement. The cases cited by Defendants to support their position that the lack of a time limitation renders the Agreements in question void and unenforceable all deal with covenants in employment agreements which attempt to restrict the disclosure of general business information. *See Baum*, 629 F.Supp. at 471–72 (information relating to the identity of contract holders was not confidential); *Wesley–Jessen*, 519 F.Supp. at 1361 (information concerning customers which did not rise to the level of a trade secret); *Nasco*, 239 Ga. at 675, 238 S.E.2d at 369 (covenant against disclosure included "any information" related to the business of the employer); *Howard Schultz & Ass.*, 239 Ga. at 187, 236 S.E.2d at 270 (general business information including the names of clients and customers, and the auditing techniques, forms and standards of the employer); *Thomas*, 234 Ga. at 787, 218 S.E.2d at 70 (information pertaining to the business or affairs of the plaintiff as well as the affairs of its clients, customers, consultants, licenses and affiliates); *Aladdin, Inc. v. Krasnoff*, 214 Ga. 519, 520, 105 S.E.2d 730, 732 (1958) (names or addresses of any or all past, present, or potential customers); *Vendo Co. v. Long*, 213 Ga. 774, 777, 102 S.E.2d 173, 175 (1958) (plaintiff made no showing that it had any trade secrets or confidential information entitled to protection).

■ The court finds, however, that the Patent Assignment and Trade Secrecy Agreements at issue here are different from the restrictive covenants considered in the cases cited above. The court further finds that these Agreements do not violate Georgia's public policy concerning free competition because they lack time limitations. Several reasons support the court's finding.[6]

First, the Patent Assignment and Trade Secrecy Agreements in this case are not employment agreements. They do not provide for a term of employment or for compensation during employment. The Agreements govern trade secrets and confidential information as well as the assignment of rights in patentable inventions. They do not encompass general business information or information which is generally known, and they do not attempt to restrict Defendants Hildebrand and Berg from using their general experience, skill and knowledge on behalf of other employers. The Agreements seek to protect only that

---

**6.** Other cases cited by Defendants in support of their position that Georgia law should control since these Agreements violate Georgia's public policy are distinguishable on their facts. *Mktg. and Research Counselors, Inc. v. Booth*, 601 F.Supp. 615 (N.D.Ga.1985) (criticizing *Nordson* and applying Georgia law since the non-competition covenant involved a territory within Georgia and the defendant employee was a Georgia resident at the time he entered the contract); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham*, 658 F.2d 1098 (5th Cir. Unit B 1981) (Georgia law applied where defendants were Georgia residents at the time they entered into the employment contract and performed under their employment contracts in Georgia); *Barnes Group, Inc. v. Harper*, 653 F.2d 175 (5th Cir. Unit B 1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982) (court applied Georgia law since the territory assigned to the defendant, a Georgia resident, encompassed 16 counties in southeastern Georgia). The facts of the instant case, however, do not show the same contacts between Defendants and the State of Georgia as were present in *Booth, Stidham,* and *Harper*.

trade secret and confidential information which was owned, held, conceived or perfected by Defendants on behalf of Salsbury during Defendants' terms of employment. The Agreements are not unreasonable in scope, and they allow Defendants to engage in a wide range of activities with other employers without violating the rights of Plaintiff.[7]

Because the information restricted in Salsbury's Patent Assignment and Trade Secrecy Agreements is different from the general business information encompassed in the usual non-disclosure covenants, the same need for a time limitation does not exist. The Georgia common law theories of misappropriation of trade secrets and breach of fiduciary relationship impose no time limit upon the protection of trade secrets. See Thomas, 234 Ga. at 789, 218 S.E.2d at 71. In Thomas, the court noted that "[t]rade secrets are entitled to protection so long as competitors fail to duplicate them by legitimate, independent research." Id. The trade secret and confidential information sought to be protected by the Salsbury Agreements concerns processes and inventions conceived or improved upon by Salsbury's employees, as well as the records, data, and methods used in discovering the processes and inventions. Unlike general business information, the disclosure of information regarding Salsbury's inventions and discoveries can bring great economic harm to Salsbury regardless of when such information is disclosed if the information is in the sole possession of Salsbury at the time of the disclosure. Since the information sought to be protected by Salsbury should remain confidential as long as it maintains competitive sensitivity and secrecy, or until it is discovered in a legitimate way by another competitor, the court finds that the lack of a time limitation in Salsbury's Agreements does not violate Georgia's public policy. See also Quittmeyer, Trade Secrets and Confidential Information Under Georgia Law, 19 Ga.L.Rev. 623, 668 n. 192 (1985) (questioning whether Georgia law should require a time limitation in any non-disclosure covenant seeking to protect confidential information).

[9, 10] In addition, the court notes that Defendants Hildebrand and Berg could be prohibited from disclosing the trade secret and confidential information protected by the Agreements even if the Agreements themselves were unenforceable. As mentioned above, the common law of Georgia prohibits the disclosure of trade secrets even in the absence of a valid contract. Thomas, 234 Ga. at 789, 218 S.E.2d at 71. In addition, the law of Georgia prohibits an employee from disclosing confidential information if such disclosure is in violation of a relationship of confidence. Baum, 629 F.Supp. at 472, citing Durham, 230 Ga. at 563, 198 S.E.2d at 149. In Durham the Supreme Court of Georgia stated:

> non-specialized customer lists and other general confidential business and customer information ... is fully protectable in the absence of contract if procured by improper means or otherwise disclosed without privilege, as in violation of relationships of confidence.

Durham, 230 Ga. at 563, 198 S.E.2d at 149 (emphasis added). Thus, the duty to refrain from disclosing confidential information may arise because of a special relationship between the employer and the former employee even absent the existence of a valid non-disclosure covenant. See Monumental Properties of Georgia, Inc. v. Frontier Disposal, Inc., 159 Ga.App. 35,

---

7. Defendants argue that the Agreements are unenforceable because they are unreasonably broad in scope. The court is not persuaded by this argument. The Agreements attempt to restrict only the trade secret and confidential information that is identified as such by Salsbury. They do not attempt to restrict the disclosure of general business information such as customer lists. The cases cited by Defendants which held that the non-disclosure covenants in question were over broad are distinguishable in that they dealt with restrictions on the disclosure of general business information. Moreover, the Agreements in question do not attempt to prohibit Defendants from disclosing all the information they obtained while at Salsbury, nor do they attempt to prohibit Defendants from using their skill and knowledge for other employers. The court finds that the information sought to be protected in the Agreements was necessary for the protection of Salsbury's legitimate business interest.

36–39, 282 S.E.2d 660, 663–64 (1981). If such a special relationship exists, an implied trust may impose a duty of confidentiality on a former employee with respect to sensitive information that does not qualify as a trade secret. *See Wesley–Jessen,* 519 F.Supp. at 1361–62; Quittmeyer, 19 Ga.L.Rev. at 665–66.

■ Both Hildebrand and Berg were in supervisory positions during their employment with Salsbury. In their respective positions, Hildebrand and Berg had extensive contact with the confidential information and trade secrets relating to the production and development of Salsbury's products, including Salsbury's MG–BAC. Both Defendants directed the work of several other employees who reported either directly or indirectly to Defendants. A Georgia court could find with little difficulty that both Hildebrand and Berg had special relationships with Salsbury, and that this relationship imposed upon them a duty to refrain from disclosing Salsbury's confidential information even absent the existence of a valid non-disclosure agreement. Since the law of Georgia could prohibit the disclosure of the information contemplated by the Agreements even if the Agreements themselves were unenforceable, finding the Agreements to be valid would not violate the public policy of this State.

The public policy of Georgia supports the protection of both trade secrets and confidential information. As noted by one Georgia court, " '[a] contract should not be held unenforceable as being in contravention of public policy except in cases free from substantial doubt where the prejudice to the public interest clearly appears.' " *Mathews,* 130 Ga.App. at 820, 204 S.E.2d at 752 (quoting 6 Encyc. of Ga.Law § 116, p. 175). Enforcing Salsbury's Agreements would

not prejudice the public interest since both Hildebrand and Berg could be prohibited from disclosing the trade secret and confidential information of Salsbury even absent the presence of a valid and enforceable non-disclosure agreement.

■ In summary, the court finds that the Agreements were executed in Iowa, they fail to show that the parties contemplated at the time of execution that the place of performance would be Georgia, and they are not in general restraint of trade or violative of the public policy of the State of Georgia. For these reasons, the substantive law of Iowa should determine the validity of these Agreements.

### B. *The Validity of the Agreements*

■ Having decided that the law of Iowa should be controlling on the question of validity, the court now must decide whether a court in Iowa would enforce a patent assignment and trade secrecy agreement which prohibits the disclosure of trade secret and confidential information in perpetuity.[8] The general rule in Iowa concerning restrictive covenants is that such covenants will be enforced if they "[are] reasonably necessary for the protection of the employer's business and [are] not unreasonably restrictive of the employee's rights nor prejudicial to the public interest." *Iowa Glass Depot, Inc. v. Jindrich,* 338 N.W.2d 376, 381 (Iowa 1983); *Ehlers v. Iowa Warehouse Co.,* 188 N.W.2d 368, 369 (Iowa 1971). In *Jindrich, supra,* the Supreme Court of Iowa stated:

> In testing the validity of a restrictive covenant, we must look to the facts and circumstances of the particular case that shed light on the reasonableness of the

8. The court is aware of only one case construing the validity of a non-disclosure covenant under Iowa law. *E.W. Bliss Co. v. Struthers–Dunn, Inc.,* 291 F.Supp. 390 (S.D.Iowa 1968), *rev'd on other grounds,* 408 F.2d 1108 (8th Cir.1969). The district court in *Bliss* enjoined the defendants from disclosing the trade secrets and proprietary information of the plaintiff after finding that the non-disclosure covenant in the employment contract, which had no time limitation, was reasonable under Iowa law. The Eighth Circuit subsequently vacated and re-

manded, holding that the preliminary injunction entered by the district court was too vague. Because of the Eighth Circuit's decision, the district court's ruling on non-disclosure covenants is of questionable precedential value. The court, however, need not rely on *Bliss* since the Iowa Supreme Court clearly set forth the law on restrictive covenants in at least two decisions handed down after *Bliss, Farm Bureau Serv. Co. of Maynard v. Kohls,* 203 N.W.2d 209 (Iowa 1972), and *Iowa Glass Depot, Inc. v. Jindrich,* 338 N.W.2d 376 (Iowa 1983).

restraint as applied to the individual interests of both parties. Although an employer has an interest in protecting his business from an employee's use of personal influence or peculiar knowledge gained in employment, the employer has no right to unnecessarily interfere with the employee following any trade or calling for which he is fitted and from which he may earn his livelihood. . . . Thus we are required to consider the employee's situation and the surrounding circumstances in order to fairly weigh the interests of the parties.

*Jindrich,* 338 N.W.2d at 383–84.

In *Ehlers, supra,* the Supreme Court of Iowa adopted the rule that even if a restrictive covenant is excessive, there should be partial enforcement of the covenant "whenever possible without injury to the public or injustice to the parties." *Ehlers,* 188 N.W.2d at 371. This rule was reaffirmed in *Kohls,* 203 N.W.2d at 211 (whenever restrictive covenants are excessive, "they will be enforced to whatever extent we find reasonable under the long established rule"). Before an Iowa court will enforce a restrictive covenant in part or in full, however, the employer must show that the enforcement is reasonably necessary to protect his business. *Ehlers,* 188 N.W.2d at 373.[9]

In determining whether or to what extent the Agreements in question are enforceable under Iowa law, the court must look to the facts and circumstances of this case to decide if enforcement is reasonably necessary to protect the business interests of Salsbury. The facts of this case show that both Hildebrand and Berg held upper-level supervisory positions at Salsbury, and both were pivotal in developing and producing Salsbury's MG–BAC. In 1981, when Salsbury placed MG–BAC on the commercial market, it was the only company selling an inactivated MG vaccine in the United States. Both Hildebrand and Berg left Salsbury and now work for Merieux Laboratories. When Hildebrand left Salsbury, he took with him some documents relating to the development and production of MG–BAC. In April of 1987, less than six months after Berg's arrival, Merieux introduced an inactivated MG vaccine on the commercial market. At the time Merieux introduced its vaccine, Salsbury was the only company selling an inactivated MG vaccine in the United States.

The court is of the opinion that partial enforcement of the Agreements is necessary to protect the legitimate business interest of Salsbury. Defendants Hildebrand and Berg obtained sensitive information while employed by Salsbury relating to products being produced in the United States only by Salsbury. Salsbury spent large amounts of money and countless hours in developing these products. Former employees should be prohibited from pirating the peculiar knowledge and information they have accumulated at Salsbury and using such knowledge and information

---

9. Defendants argue that a Georgia court will not apply the law of another state if that sister state applies the blue pencil rule to restrictive covenants ancillary to employment contracts. *See Dothan Aviation Corp. v. Miller,* 620 F.2d 504 (5th Cir.1980). Defendants contend that even if Georgia's conflict of laws rules point to the application of Iowa law, a Georgia court would refuse to follow Iowa law since Iowa follows a theory of partial enforcement of restrictive covenants which is similar to the blue pencil rule. The court finds, however, that Defendants' argument is without merit. Although Georgia courts do not use the blue pencil rule to enforce non-competition covenants ancillary to employment contracts, they do apply the blue pencil rule to covenants not to compete made by a seller in connection with the sale of a business. *Dothan Aviation Corp.,* 620 F.2d at 507; *White v. Fletcher/Mayo/Assocs.,* 251 Ga. 203, 205, 303 S.E.2d 746, 749 (1983). Thus, Georgia law does not provide that blue-pencilling is always in contravention of the public policy of this State. The cases cited by Defendants relate to non-compete agreements ancillary to employment contracts. The restrictive covenants in the Agreements in this case, however, attempt to prohibit the disclosure of Salsbury's sensitive information. The covenants do not attempt to prohibit either Hildebrand or Berg from pursuing employment with any competitor in any other state. Therefore, the authority cited by Defendants does not support a finding that Georgia courts would refrain from applying the blue pencil rule to covenants which attempt to restrict the disclosure of sensitive information, nor does the authority support a finding that Georgia would refuse to apply the law of a sister state if such law provided for the partial enforcement of non-disclosure covenants.

for the economic gain of another employer. Moreover, prohibiting Hildebrand and Berg from using this sensitive information does not unnecessarily interfere with the pursuit of their career with another company, nor does it prohibit these Defendants from working on the development of other products at Merieux which are competitive with products of Salsbury.

Accordingly, this court finds that the Agreements should be enforced to prohibit Defendants Hildebrand and Berg from disclosing trade secret and confidential information relating to the production and development of Salsbury's inactivated MG vaccine. Any information which is not trade secret and confidential information of Salsbury concerning this product is not protected by the Agreements.[10] Because it relates to the development of a unique product in the industry, the information will be protected so long as competitors fail to develop a similar product by legitimate, independent research.

### III. CONCLUSION

In sum, the court finds that Iowa law is controlling in determining the validity of the Agreements. Further, the court finds that the Agreements are valid and enforceable to a partial extent under the substantive law of Iowa, and therefore, the court will enforce the Agreements to prohibit the disclosure of trade secret or confidential information related to Salsbury's MG–BAC.

For the reasons stated above, Defendants' Motion to Dismiss Counts Two and Three of Plaintiff's Complaint is hereby DENIED, and the parties are directed to submit proposed findings of fact and conclusions of law for the court's consideration on the issues of liability and damages in this case.

SO ORDERED.

---

10. The parties have not yet submitted proposed findings of fact and conclusions of law on the issue of what constitutes the trade secret and confidential information of Salsbury. The court is addressing only the validity of the Agreements in this Order, and will defer a ruling on the trade secret and confidential information issue until after receiving post-trial pleadings from the parties.